# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 27, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

DATE 10/18/18 Kim Redmon, DC

2017-SC-000522-MR

RAYMOND KYLE WEATHERLY            APPELLANT

V.           
ON APPEAL FROM FULTON CIRCUIT COURT
HONORABLE TIMOTHY A. LANGFORD, JUDGE
NO. 17-CR-00037

COMMONWEALTH OF KENTUCKY            APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART AND VACATING IN PART

Raymond Kyle Weatherly (Weatherly) was sentenced to 20 years in prison for various drug related offenses. He appeals as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution. After a careful review, we affirm Weatherly's convictions but vacate a portion of his sentence.

### I. BACKGROUND.

On February 21, 2017, Weatherly and Eva Brady (Brady) stopped at a gas station in Fulton County. Weatherly had previously consumed alcohol and marijuana and Brady had consumed methamphetamine. Brady entered the

store while Weatherly remained in his truck. A Kentucky State Police Trooper, Paul Hale (Hale), stopped at the gas station to air up one of the tires on his cruiser. Trooper Hale indicated that, while airing up his tire, he could smell marijuana and the odor intensified when Weatherly got out of his truck and went inside the store.

Weatherly entered the store with a pill bottle and asked Brady to put the pill bottle in her vagina. Weatherly believed the police would not search Brady and Weatherly indicated that he did not have any other drugs in the truck. Upon exiting the store, Trooper Hale stopped Brady and administered a sobriety test. Brady admitted to being high on methamphetamine after being charged with driving under the influence.

When Trooper Hale was arresting Brady, she was unable to sit down in the cruiser because of the pill bottle in her vagina. Brady removed the bottle, which contained a blunt[1], cocaine, methamphetamine, and 29 oxycodone pills. Brady told Trooper Hale that the bottle belonged to Weatherly. Later, Brady eventually reached an agreement with the Commonwealth to receive unsupervised pretrial diversion in exchange for her testimony against Weatherly.

Weatherly admitted to smoking marijuana and consented to Trooper Hale searching his truck. The search revealed a 9mm pistol in the floorboard console and a shotgun in the backseat. Trooper Hale indicated that he still smelled unsmoked marijuana and eventually discovered a package containing

---

[1] A blunt is a hollowed-out cigar filled with marijuana.

marijuana under the passenger side of the truck. Weatherly denied the package was his but then admitted to tossing it under the truck.

Weatherly was indicted and ultimately convicted by a jury of first-degree possession of a controlled substance (for each separate drug: methamphetamine, cocaine, and opiates), enhanced by possession of a firearm; possession of marijuana, enhanced by possession of a firearm; two counts of tampering with physical evidence, one for the pill bottle and one for the package of marijuana underneath the truck; and trafficking in a controlled substance, firearm enhanced, for the opiates in the pill bottle. The jury recommended concurrent sentences except that the firearm enhanced trafficking charge was to run consecutively for a total of 25 years in prison.

Upon post-verdict, pre-sentencing motion, the trial court vacated the trafficking conviction due to an improper jury instruction. Instead of setting the remaining charges to run concurrently, the trial court imposed consecutive sentences (10 years each) for the possession of methamphetamine, gun enhanced and possession of cocaine, gun enhanced offenses. With the remaining sentences to run concurrently, Weatherly's total term of imprisonment was set at 20 years. He now appeals, arguing several points of error. We address each one in turn and add additional background as necessary.

## II. ANALYSIS.

### A. Weatherly was not entitled to a directed verdict on the tampering with physical evidence charge relating to the marijuana.

Weatherly's first claim of error is that he was entitled to a

3

directed verdict for tampering with physical evidence, specifically for placing the package of marijuana underneath the passenger side of his truck. This issue is unpreserved so we analyze Weatherly's claim under the palpable error standard. Kentucky Rule of Criminal Procedure (RCr) 10.26. An error is palpable if it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). "A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceeding." *Id.*

On appellate review, the Court must determine if, given the totality of the evidence, "it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham*, 816 S.W.2d 189, 187 (Ky. 1991). If so, the defendant is entitled to a directed verdict, but it must be remembered that the Commonwealth must only produce more than a "mere scintilla" of evidence to defeat the defendant's motion for a directed verdict. *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1993).

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Benham*, 816 S.W.2d at 187. "A court reviewing for palpable error must do so in light of the entire record; the inquiry is heavily dependent upon the facts of each case." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 29 (Ky. 2011)

4

(citing *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

Kentucky Revised Statute (KRS) 524.100 addresses the charge of tampering with physical evidence, and, in pertinent part, states as follows:

(1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding.

It appears that Weatherly makes two arguments for why he should have been granted a directed verdict: (1) case law does not support a conviction for tampering when the defendant merely separates himself from physical evidence of a crime and (2) policy dictates Weatherly's entitlement to a directed verdict because Weatherly faced a maximum one year prison sentence for possession of marijuana, but was sentenced to five years for tampering when he tossed the marijuana package under his truck. Weatherly directs this Court to case law in other jurisdictions that hold a defendant does not violate the respective "tampering" statutes when the defendant merely abandons, drops, or throws down physical evidence of a crime.[2] While we often look to our sister states for

---

[2] *See State v. Hawkins*, 406 S.W.3d 121 (Tenn. 2013); *State v. Jones*, 983 So.2d 95 (La. 2008); *Stepovich v. State*, 299 P.3d 734 (Alaska Ct. App. 2013); *Obas v. State*, 935 So.2d 38

5

guidance on novel issues, we need look no further than our own precedent to resolve Weatherly's claim of error.

This Court has previously clarified the sufficiency of evidence required for a tampering conviction in *Mullins v. Commonwealth*, 350 S.W.3d 434 (Ky. 2011). In *Mullins*, the Commonwealth presented evidence that Mullins was the shooter, that Mullins got into a car holding a shiny object, that the bullets were possibly fired by a revolver, that Mullins was seen with a revolver days before the murder, and that no gun or shell casings were found at the scene. *Mullins*, 350 S.W.3d at 442. Mullins's counsel maintained that the fact that the gun was never found was not enough to support the tampering charge. *Id.* This Court held, "The evidence presented indicates that the gun was on Appellant's person from the time Faulkner was shot until he entered Porter's car and told him to drive away, and nothing more. Appellant's walking away from the scene with the gun is not enough to support a tampering charge without evidence of some additional act demonstrating an intent to conceal." *Id.* (*C.f. Commonwealth v. Henderson*, 85 S.W.3d 618 (Ky. 2002)).

*Mullins* went on to distinguish its holding from *Commonwealth v. Henderson*, 85 S.W.3d 618 (Ky. 2002). *Henderson* involved a defendant who had stolen a purse and, during a police chase, removed the money from the purse and placed it in the insole of his shoe. *Mullins*, 350 S.W.3d at 442-43 (citing *Henderson*, 85 S.W.3d at 619). *Henderson* held that where the evidence

_____

(Fla. 4th Dist. App. 2006); *Evans v. State*, 997 So.2d 1281 (Fla. 4th Dist. App. 2009); *Pennewell v. State*, 977 A.2d 800 (Del. 2009); *Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014).

is ultimately located matters, and whether that location is a conventional rather than unconventional location. *Mullins*, 350 S.W.3d at 443 (citing *Henderson*, 85 S.W.3d at 620).

"The fact [Mullins] carried the gun away from the scene with him was merely tangential to the continuation of that crime." *Mullins*, 350 S.W.3d at 443. "The Commonwealth cannot bootstrap a tampering charge onto another charge." *Id.* There must be some evidence of an intentional act of concealment. *Id.* at 444.

> [O]ne who conceals or removes evidence of criminal activity contemporaneously with the commission of his crime commits the offense of tampering with physical evidence. The compelling logic is that one who has committed a criminal act and then conceals or removes the evidence of his crime does so in contemplation that the evidence would be used in an official proceeding which might be instituted against him.

*Burdell v. Commonwealth*, 990 S.W.2d 628, 633 (Ky. 1999) (internal citations omitted).

The case before us is analogous to *Henderson*. Weatherly admitted to smoking marijuana prior to going to the gas station. He had marijuana in his truck. Officer Hale testified that he smelled an odor of marijuana coming from the vehicle and that odor got stronger when Weatherly exited the vehicle. Weatherly's intentional act of putting the package of marijuana under the vehicle is separate and distinct from his possession of the marijuana. This was an intentional act of concealment which was also present in *Henderson* but not in *Mullins*. There was sufficient evidence of Weatherly's intent to conceal, therefore, Weatherly was not entitled to a directed verdict.

7

**B. Weatherly was not entitled to a directed verdict on tampering with the pill bottle.**

Weatherly next claims error in the trial court's failure to grant him a directed verdict on the tampering charge relating to the pill bottle. Weatherly moved for a directed verdict at trial, and thus, this issue is properly preserved. The corresponding jury instruction stated:

You will find the Defendant, Raymond K. Weatherly, guilty of Tampering with Physical Evidence under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about the 21st day of February, 2017, and before the finding of the indictment herein, the Defendant, Raymond K. Weatherly, altered, destroyed or concealed physical evidence, namely the pill bottle, which the Defendant, Raymond K. Weatherly believed was about to be used in a criminal action;

AND

B. That the Defendant, Raymond K. Weatherly, did so with the intent to impair its availability in the trial.

At trial, the jury was instructed, as indicated above, to find Weatherly guilty as the principal actor. Defense counsel moved for a directed verdict asserting that Brady was not a credible witness. Weatherly maintains that because it was Brady who concealed the pill bottle, Weatherly could, at most, be convicted as

8

an accomplice, which was not an instruction provided to the jury, and there was no evidence to support the instruction on Weatherly being the principal actor. We disagree.

The jury heard evidence from Trooper Hale that he observed Weatherly with the pill bottle. Surveillance footage from the gas station also showed Weatherly holding the pill bottle. Weatherly then approached Brady and requested that she hide the pill bottle for him. We hold that this was enough for a jury to find that Weatherly intended to conceal or remove evidence pursuant to KRS 524.100. *See Forte v. Commonwealth*, 2016 WL 4488309, *1, *6 (Ky. Aug. 25, 2016).

> [F]orte did not simply leave the scene with the bag of drugs. Following the robbery, Forte, James, and Taylor went to Forte's sister's house and divided up the proceeds. At some point after that Forte drove to Thompson's house, gave Thompson the bag, and asked Thompson to hold it for him while he went to the store. From that evidence a reasonable juror could have easily inferred that Forte did not want to have the drugs with him if he was stopped by the police, and that he was trying to conceal the drugs from the police. Therefore, we discern no error in the trial court's denial of Forte's motion for a directed verdict.

The same is true for Weatherly. The jury was presented with evidence showing that Weatherly possessed the pill bottle until he asked Brady to hide it for him. This, again, could lead a reasonable juror to infer that Weatherly was intentionally acting to conceal the pill bottle. Thus, Weatherly was not entitled to a directed verdict.

**C. The question of firearm enhancement to Weatherly's possession offenses was a question of fact for the jury and this Court declines to overrule *Commonwealth v. Montaque.***

Weatherly's possession offenses were enhanced by the fact that Trooper

9

Hale found a pistol in the floorboard console and an unloaded shotgun in the backseat of Weatherly's truck. Weatherly maintains that the firearm enhancement statute should not apply simply because a firearm was found in the same place as drugs. Weatherly directs us to cases from the Fourth, Fifth, and Eighth Circuits that have distinguished possession offenses from trafficking offenses when applying a firearm enhancement statute. Weatherly requests this Court abandon the precedent established by *Commonwealth v. Montaque*, 23 S.W.3d 629 (Ky. 2000). We begin by an in-depth discussion of the statute and our case law.

KRS 218A.992 states:

(1) Other provisions of law notwithstanding, any person who is convicted of any violation of this chapter who, at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm, shall:

(a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony; or

(b) Be penalized as a Class D felon if the offense would otherwise be a misdemeanor.

In *Houston v. Commonwealth*, 975 S.W.2d 925, 927 (Ky. 1998), this Court held that "actual physical possession of a firearm is not required for a jury to find that one has possession of a firearm for purposes of KRS 218A.992," but a drug violation may be enhanced through constructive

10

possession of a firearm. The Court in *Houston* reasoned that constructive

possession had long been used to connect defendants to controlled substances.

*Id.* (*Rupard v. Commonwealth*, 475 S.W.2d 473 (Ky. 1972); *Franklin v.*

*Commonwealth*, 490 S.W.2d 148 (Ky. 1972), cert. denied, 414 U.S. 858, 94

S.Ct. 66, 38 L.Ed.2d 108 (1973); *Lindsay v. Commonwealth*, 500 S.W.2d 786

(Ky. 1973); *Leavell v. Commonwealth*, 737 S.W.2d 695 (Ky. 1987); *Clay v.*

*Commonwealth*, 867 S.W.2d 200 (Ky. 1993); *Dawson v. Commonwealth*, 756

S.W.2d 935 (Ky. 1988); *Hargrave v. Commonwealth*, 724 S.W.2d 202 (Ky.

1986), cert. denied, 484 U.S. 821, 108 S.Ct. 81, 98 L.Ed.2d. 43 (1987)).

*Houston* went on to acknowledge that no Kentucky cases, at that time,

utilized the concept of constructive possession in connecting defendants to

firearms, but other jurisdictions had determined that a person may have

constructive possession of a firearm.[3] *Id.* at 928. A current examination of

---

[3] *Argo v. State,* 53 Ark.App. 103, 920 S.W.2d 18,20 (Ark.Ct.App., 1996) ("A showing of constructive possession ... is sufficient to prove a defendant is in possession of a firearm."); *Simpson v. State,* 213 Ga.App. 143, 444 S.E.2d 115, 117 (Ga.App., 1994)("...this court has previously held that constructive possession is sufficient to prove a violation of the subject offense [possession of firearm by a felon]."); *State v. Eickelberg,* 574 N.W.2d 1, 6 (Iowa, 1997) (Defendants' sentences properly enhanced under statute even though defendants did not actually possess firearms because there was sufficient evidence to "support the finding that defendants were in immediate possession or control of the firearms" while participating in a drug offense.); *State v. Neeley,* 704 So.2d 443, 447 (La.App., 1997) ("... constructive possession, as opposed to actual possession, is sufficient to satisfy the possession element [of the crime of possession of firearm by convicted felon]."); *People v. Williams,* 212 Mich.App. 607, 538 N.W.2d 89, 91 (Mich.App., 1995)("Possession [of a firearm] may be actual or constructive and may be proved by circumstantial evidence."); *Jones v. State,* 111 Nev. 848, 899 P.2d 544, 546 (Nev., 1995) (" ... these actions permitted the jury to find the requisite knowledge and control necessary for constructive possession of a weapon."); *State v. Messer,* 107 Ohio App.3d 51, 667 N.E.2d 1022, 1025 (Ohio App., 1995)(" 'Possession' [of a firearm] may be either actual or constructive."); *Hill v. State,* 898 P.2d 155, 166 (Okla.Crim.App., 1995)("Lacking any direct evidence Appellant actually possessed either the cocaine or the gun, the State must prove he constructively possessed each."); *State v. Wells,* 147 Or.App.125, 935 P.2d 447, 449 (Or.App., 1997)("Possession [of a firearm for purposes of being a felon in possession of a firearm] may be actual or constructive."); *Commonwealth v. Woody,* 451 Pa.Super. 324, 679 A.2d 817, 820 (Pa.Super., 1996)("We find that a jury could reasonably infer ... that appellant maintained

11

these cases from other jurisdictions indicates that constructive possession of firearms is still an accepted legal proposition in these states.

The Court further expounded on constructive possession and KRS 218A.992 in *Commonwealth v. Montaque.* While constructive possession of a firearm is enough for enhancement under the statute, "the statute requires a nexus between the crime committed and the possession of a firearm . . . contemporaneous possession of a firearm is not sufficient to satisfy the nexus requirement." *Montaque,* 23 S.W.3d at 632.

> [W]henever it is established that a defendant was in actual possession of a firearm when arrested, or that a defendant had constructive possession of a firearm within his or her "immediate control when arrested," then, like under the federal sentencing guidelines, the Commonwealth should not have to prove any connection between the offense and the possession for the sentence enhancement to be applicable. However, the defendant should be allowed to introduce evidence to the contrary, which would create an issue of fact on the issue. Next, when it cannot be established that the defendant was in actual possession of a firearm or that a firearm was within his or her immediate control upon arrest, the Commonwealth must prove more than mere possession. It must prove some connection between the firearm possession and the crime.

*Id.* at 632-33 (internal citations omitted).[4]

---

constructive possession of the firearm and drugs recovered from his vehicle."); *State v. Reyes,* 671 A.2d 1236, 1237 (R.I., 1996)(Appellate court held that trial judge properly "reasoned that defendant had constructive possession of the weapon."); *Archer v. Commonwealth,* 26 Va.App. 1, 492 S.E.2d 826, 831 (Va.App., 1997)("Proof that appellant possessed the gun found under the mattress, either actually or constructively, was sufficient to support his conviction for possession of a firearm by a convicted felon.").

[4] *United States v. Sanchez,* 928 F.2d 1450, 1459 (6th Cir. 1991) (quoting the commentary to the federal sentencing guidelines under Section 2D1.1(b)(1): "The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.").

Police officers executed a search warrant for Montaque's apartment that she shared with Ronald Johnson, where nine ounces of cocaine were discovered along with digital scales, knives, plastic bags and cellular phones. *Id.* at 630. Officers also found an unloaded, semi-automatic handgun in the trunk of a car owned by Johnson's mother parked in the apartment building parking lot. *Id.* at 631. Montaque testified that she had used the car previously, and a friend had asked her to store the gun for him, so she wrapped the gun in a plastic shopping bag and placed the gun, along with two ammunition clips and a box of loose shells, in the back of the trunk behind a speaker box. *Id.* Montaque denied that the gun played any part in her drug dealing. *Id.* Montaque appealed the trial court's denial of her motion for a directed verdict on the firearm enhancement offense. This Court agreed a directed verdict should have been given and stated the following:

> [I]n the case at bar, if drugs had been found in the Cadillac along with the gun, then a sufficient connection would have been established to create a question of fact for the jury. Likewise, if there was evidence that Montaque used the Cadillac in connection with or to facilitate her offenses, then the case should have gone to the jury. But in this case there is nothing to connect the gun or the Cadillac to the possession or the trafficking of drugs. Nor was the gun in Montaque's actual possession or within her immediate control when she was arrested.

*Id.* at 633.

We must point out that *Montaque* was a 4-3 decision by this Court, with Justices Graves and Wintersheimer, and then Chief Justice Lambert dissenting. The dissenters believed the majority in *Montaque* added an additional element to the statute because KRS 218A.992 does not require proof

13

of a nexus between the firearm possession and the drug offenses. *Id.* at 633-34 (Graves, J. dissenting). "Legislatures have enhanced the penalty for possession of a firearm in connection with drug dealings because a firearm increases the likelihood and potential for greater violence." *Id.* at 634.

The divide in *Montaque* over the limited reach of *Houston* is relevant in showing that the gun enhancement statute was properly applied to Weatherly's drug offenses. Under *Houston,* Weatherly was in constructive possession of both the pistol and the shotgun that were found in his truck. Under *Montaque,* there was a sufficient nexus to create a jury question on the issue because the pistol and the shotgun were found in close proximity to the drugs. *See also McCloud v. Commonwealth,* 286 S.W.3d 780, 789-90 (Ky. 2009).[5] Weatherly was in the truck when Trooper Hale smelled an odor of marijuana. Weatherly admitted to tossing the package of marijuana under the truck, albeit after first denying ownership of the package. Trooper Hale's search uncovered cocaine, methamphetamine, and 29 oxycodone pills, in addition to the two firearms. Due to the "increased danger of violence when drug traffickers possess

---

[5] *See also Campbell v. Commonwealth,* 260 S.W.3d 792, 804 (Ky.2008) ( "Furthermore, the proof was sufficient to create a jury issue as to the elements of the firearm enhancement: possession of a firearm at the time the drug offenses were committed and possession of a firearm in furtherance of the drug offenses. Whether or not the gun was covered by bedding, it was found in Campbell's home and, thus, in his constructive possession. Furthermore, given its proximity to the marijuana, drug paraphernalia, and methamphetamine manufacturing equipment found, the jury could reasonably infer that it was used in furtherance of the drug offenses. Thus, the trial court properly denied the directed verdict motion....") (footnote omitted); *Kotila v. Commonwealth,* 114 S.W.3d 226, 247 (Ky.2003), *overruled on other grounds by Matheney v. Commonwealth,* 191 S.W.3d 599 (Ky.2006) ("Thus, constructive possession of a firearm within a vehicle at the time of arrest and the commission of the offense, as here, satisfies the 'nexus' requirement of KRS 218A.992.").

14

weapons," this Court holds that the gun enhancements to Weatherly's offenses were properly submitted to the jury.

### D. The Commonwealth did not err in its closing argument during the sentencing phase.

Weatherly argues that manifest injustice occurred during the Commonwealth's closing argument during the sentencing phase. The Commonwealth called Probation and Parole Officer, Melanie Winstead, to testify regarding the guidelines for parole eligibility. Winstead testified that Weatherly's convictions had a parole eligibility of 20%.

During the Commonwealth's closing argument, the prosecutor, after telling the jury the sentences he would like to see recommended, made the following statement to which Weatherly takes issue: "What that means ladies and gentlemen, after five years, no matter what [defense counsel] said, more than likely he's gonna get paroled . . . if he behaves himself."[6]

The Commonwealth maintains that this commentary was proper based on the parole eligibility testimony previously presented to the jury. The Commonwealth also assured the jury that it could make a recommendation against what the Commonwealth had requested. Weatherly, on the other hand, argues that the Commonwealth's statement was a misrepresentation of possible parole eligibility.

Because this error is unpreserved, we review for palpable error. RCr 10.26. Both parties questioned Winstead regarding the time Weatherly would

---

[6] TR 07/18/17, 3:39:58-3:40:08 P.M.

be required to serve before becoming parole eligible, based on differing valuations in sentences. Winstead accurately testified that Weatherly would have to serve 20% of whatever sentence was imposed. Winstead further testified that she was unaware of any previous felony convictions for Weatherly. The Commonwealth did not definitively assert that Weatherly would be released on his first parole eligibility date but made a "more than likely" statement based on the evidence that had been presented. This does not rise to palpable error.

### E. The trial court did not abuse its discretion in sentencing Weatherly.

During the sentencing phase, both defense counsel and the Commonwealth discussed the convictions and the penalty ranges for each, emphasizing that the trafficking conviction was the most serious offense. The jury recommended concurrent sentences for all convictions but a 15-year consecutive sentence for the trafficking conviction.

At the final sentencing hearing, the trial court vacated Weatherly's conviction for trafficking due to an error in the jury instructions. Rather than sentencing Weatherly to concurrent sentences, consistent with the remainder of the jury's recommendation, the trial court indicated that it was his impression that the jury had concerns regarding how the parole eligibility guidelines would affect the length of Weatherly's sentence.[7] Therefore, the trial

---

[7] During sentencing deliberations, the jury sent a question to the trial judge indicating that the jury liked the Commonwealth's recommendation on sentencing. The Commonwealth recommended that the jury sentence Weatherly to 25 years because Weatherly would be eligible for parole after five years. The jury's note to the judge stated that they liked the Commonwealth's recommendation and sought guidance on how to impose the sentences to reach the desired result. The trial judge, after speaking with the Commonwealth and defense

16

court imposed a consecutive 10-year sentence on one of the possession charges, sentencing Weatherly to a total of 20 years.

Deciding whether a defendant should serve consecutive or concurrent sentences is within the province of the trial court and such determinations are reviewed for an abuse of discretion. *Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016). "[W]e will not disturb the trial court's sentencing determination unless convinced that its decision was 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.*

"KRS 532.055 does not impose a duty upon the trial court to accept the recommendation of the jury as to sentencing. The jury's recommendation is only that, and has no mandatory effect." *Murphy v. Commonwealth*, 50 S.W.3d 173, 178 (Ky. 2001) (internal citations omitted). Here, the trial court considered the jury's recommendation, along with the presentence investigation report, and other evidence presented at the sentencing hearing. The trial court imposed a sentence within the confines of the law and the trial court did not abuse its wide discretion in such sentencing.

**F. The imposition of court costs was proper.**

The trial court assessed Weatherly court costs in the amount of $160.[8]

---

counsel, informed the jury that it would have to do the math and indicate which sentences would run concurrently and consecutively to impose a 25-year sentence.

[8] There is a discrepancy in the amount of the court costs imposed. Weatherly's brief states that court costs were in the amount of $140. The Order of Judgment is somewhat illegible in that it appears the trial court wrote down either $140 or $160, and then tried to make a change to the "4" or the "6." The recording of the sentencing proceeding indicates that costs were $160 and the trial court stated he was imposing costs in the amount of $160. TR 08/24/2017, 11:38:20-11:38:27 a.m. We, therefore, hold the correct amount to be $160.

17

Weatherly asserts that the costs were improperly imposed because he was granted the right to appeal in forma pauperis and because he would not be able to pay the costs within the foreseeable future.

> (2) The taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to probation, suspension, proration, deduction, or other form of nonimposition in the terms of a plea bargain or otherwise, unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future.

KRS 23A.205(2).[9] Weatherly concedes this argument is unpreserved and requests palpable error review.

Court costs are mandatorily imposed unless the defendant is deemed a "poor person." KRS 453.190(2) defines a "poor person" as "a person who is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing."

"The assessment of court costs in a judgment fixing sentencing is illegal *only if it orders a person adjudged to be "poor"* to pay the costs." *Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014) (emphasis added). "If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal." *Id.*

---

[9] The previous version of KRS 23A.205(3) required court costs to be paid within one (1) year of the date of sentencing. Effective June 29, 2017, the "one year" language was removed from (3) leaving the "foreseeable future" language in (2).

In *Spicer*, the defendant was appointed a public defender and permitted to proceed in forma pauperis on appeal, but this Court held that those facts alone do not necessarily exempt a defendant from paying court costs. *Id.* In contrast, Weatherly was represented by private counsel throughout his trial. The trial court entered an order indicating it heard testimony regarding Weatherly's financial status and deemed Weatherly responsible for court costs. Without proof to the contrary, there is no error for this Court to correct and we affirm the imposition of court costs. *Id.*; *see also Howard v. Commonwealth*, 496 S.W.3d 471, 478-79 (Ky. 2016).

## G. The imposition of jail fees was improper.

Weatherly was ordered to pay $22 per day for the 69 days he spent in the Fulton County jail. The total amount of the fees imposed was $1,513. Weatherly admits this argument is unpreserved and requests palpable error review. RCr 10.26.

KRS 441.265 states, in pertinent part:

(1) A prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown.

(2) (a) The jailer may adopt, with the approval of the county's governing body, a prisoner fee and expense reimbursement policy, which may include, but not be limited to, the following:

1. An administrative processing or booking fee;

19

2. A per diem for room and board of not more than fifty dollars ($50) per day or the actual per diem cost, whichever is less, for the entire period of time the prisoner is confined to the jail;

3. Actual charges for medical and dental treatment; and

4. Reimbursement for county property damaged or any injury caused by the prisoner while confined to the jail.

Weatherly contends that the jail fees were an illegal fine because there was no proof Fulton County had established a jail fee reimbursement policy pursuant to the statute and no proof of the actual cost of confinement. The Commonwealth counters that Weatherly's assertion of the need for such proof is not supported by any statutory or case law precedent.

We agree with Weatherly. This Court very recently held that when the county has not set forth an approved reimbursement policy for jail costs, the trial court cannot assign a per diem fee for prisoners. *Melton v. Commonwealth*, 2016-SC-000552-MR, 2018 WL 898307, *1, *12 (Ky. Feb. 15, 2018). From the record, there is no evidence that Fulton County had established a jail fee reimbursement policy pursuant to statute, and no evidence that such policy was ever presented to the trial court to be considered in sentencing. Therefore, we vacate the $1,513 in jail fees.

### III. CONCLUSION.

For the foregoing reasons, we affirm all of Weatherly's convictions, but we vacate that part of the judgment regarding the imposition of jail fees.

All sitting. All concur.

20

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General