STATE OF OREGON, *Respondent,*
*v.*
TIMOTHY GORDON DICKERSON, *Appellant.*
(No. B42-298, CA 10277)
584 P2d 787

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the Brief was Morrow & McCrea, P.C., Eugene.

Kathryn A. Logan, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant appeals his conviction by jury of sexual abuse in the second degree. ORS 163.415. His primary ground is that the victim's dress and a photograph of her in the dress should have been excluded from evidence because they were not disclosed to him as required by the criminal discovery statutes. He also contends that the victim's pantyhose were improperly admitted into evidence and that his motion in arrest of judgment based on the asserted unconstitutionality of ORS 163.415 was erroneously denied.

The charge arose out of an incident which occurred at defendant's place of business after working hours on the third day of the victim's employment there. She testified that after all the other employees had left, defendant offered her a drink, which she refused. He then grabbed her, placed his hand on her breast and kissed her. He took her hand and placed it on his clothed genitals. Then he forced her part way up a ladder leading to a loft, and while doing so he touched her genitals and attempted to remove her pantyhose. Then she struck him, broke away and left.

Defendant's version of the incident was markedly different. After the other employees had left for the day, he asked her if she would like to have a drink, either in the shop or at a nearby restaurant. She said she preferred to stay in the shop. During the next hour and a half, each of them had four mixed drinks. After the third drink, defendant recalled, the victim said, "I'm really high." According to him, during the entire period the only physical contact between the two was a mutual voluntary kiss.

■ We deal first with defendant's final assignment of error. He made a motion in arrest of judgment on the ground that ORS 163.415 is unconstitutionally vague and overbroad. That motion was properly denied. *State v. Turner,* 33 Or App 157, 575 P2d 1007, *rev den* 282 Or 537 (1978); *State v. Pagel,* 16 Or App 412, 518 P2d 1037, *rev den, cert den* 419 US 867 (1974).

[ 481 ]

Defendant argues that in admitting the alleged victim's dress and a photograph of her in the dress, the trial court abused its discretion under the discovery statutes, ORS 135.805 *et seq.* On the night of the alleged incident (June 17, 1977), the victim took off the dress she was wearing and left it in her bedroom. She and her boyfriend were living with his parents. The following Monday she took the dress to the police in a paper sack but was told to bring it back later to the person who had been assigned to the case. She took the dress back to the house, put it away and forgot about it.

On Thursday, January 12, 1978, the first day of defendant's trial, the boyfriend's mother discovered the dress in a sack in a chest of drawers. She notified the victim the next day. Meanwhile, the trial had been continued until the following Tuesday for reasons unrelated to the discovery of the dress. On Monday, January 16, the district attorney obtained possession of it. That afternoon the alleged victim was asked to pose for a photograph in the dress. Pre-trial statements of two prospective defense witnesses, along with the testimony of one of those witnesses on the first day of trial, had alerted the prosecution that the length of the alleged victim's dress would probably be made an issue. Under ORS 135.845(2),[1] the prosecution, when the dress came into its possession and it formed the intent to offer the garment in evidence, had a duty promptly to notify the defense.

When the trial resumed on Tuesday morning, a defense witness testified that on the day of the alleged crime the victim had changed at lunchtime from slacks into a "miniskirt." (that was essentially the same as the testimony of another defense witness on

---

[1] ORS 135.845(2) provides:

"If, after complying with the provisions of ORS 135.805 to 135.873, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, he must promptly notify the other party of the additional material or information."

the preceding Thursday.) On cross-examination the prosecutor asked a number of questions about the "miniskirt." Unbeknown to defendant, the prosecutor then had the dress in the courtroom. The major portion of the cross-examination of the witness focused upon the dress. The prosecutor asked in particular about its length. The witness concluded that the hem of the skirt was "very close to the crotch." The prosecuting attorney concluded his cross-examination with questions which were clearly intended to suggest that the witness might be lying about the dress to help defendant. No indication was given that the dress had been found.

On Tuesday afternoon defendant took the stand. He was asked briefly on direct examination about the alleged victim's change of clothing on the day in question. He described the dress she had on in the afternoon as "very, very short." On cross-examination the prosecuting attorney again focused extensively on the dress. The following exchange took place:

(District Attorney): "Mr. Dickerson, you told [the defense attorney] that at noon [the victim] went home and changed her dress, is that right?

(Defendant): "That's correct.

(District Attorney): "She put on a dress, is that right?

(Defendant): "That's correct.

(District Attorney): "Is it a skirt or is it a dress?

(Defendant): "I believe it to be a dress.

(District Attorney): "You've heard other people testify here today, but you are sure its a dress?

(Defendant): "Yes.

(District Attorney): "It's your testimony that it came how high—just below the crotch from * * *

(Defendant): "I would say two to three inches below the crotch level.

[ 483 ]

(District Attorney): "About mid-thigh?

(Defendant): "I would say a little bit higher than that.

(District Attorney): "Sorta up in there?

(Defendant): "No, some place in the middle
* * *

(District Attorney): "About right there?

(Defendant): "Uh huh.

(District Attorney): "You're certain of that?

(Defendant): "As certain as I can be comparing you to her * * *

(District Attorney): "As certain as you are about everything else you testified to?

(Defendant): "I believe it to be two to three inches below the crotch area, and this is a guess.

(District Attorney): "It's a guess isn't it? I'll show you what has been marked at state's six.[2] Is that the dress?

(Defendant): "I don't honestly believe with these colors that it is. It may very well be, maybe the colors * * * I thought it had more brown to it.

(District Attorney): "Is that the same length as the dress that she was wearing on the night in question?

(Defendant): "It seems to me that it was shorter.

(District Attorney): "It seems to you that it was shorter; are you sure of that?

(Defendant): "It seems sir.

---

[2]State's exhibit six was the photograph of the alleged victim in the dress she wore on the day of the incident.

(District Attorney): "Did you rip that dress in any way?

(Defendant): "No sir.

(District Attorney): "Did you see any rips in it?

(Defendant): "I didn't notice any.

(District Attorney): "Did you notice any while you were kissing her?

(Defendant): "I wasn't looking at her dress for any types of rips sir.

(District Attorney): "Is this the dress?"

The prosecuting attorney had just then pulled the dress from a sack. He offered it and the photograph to impeach defendant.

Defense counsel objected on the ground that the state had failed to make the disclosure required by ORS 135.845. After conducting a hearing out of the presence of the jury, the court ruled both the photograph and the dress (which had a slightly open seam near breast level) admissible. The court offered the defense a continuance. Defense counsel rejected the offer on the basis that it would not cure the effect of the prosecution's surprise tactics.

■ The criminal discovery statutes were intended to minimize surprise and to eliminate "trial by ambush." They were adopted from the ABA Standards Relating to Discovery and Procedure Before Trial. The commentary to § 1.1 of those standards states:

"Generally, an attorney can be effective in a trial only to the extent he has the information necessary to plan effectively. Quick wits may be the mark of the trial lawyer, but they are not always sufficient for the orderly exposition and testing of evidence, which is the purpose of a trial. Where planning is foreclosed by lack of information, as has long been the custom in much of criminal litigation, surprise and gamesmanship usually govern the conduct of the proceedings. The result is too often a general obfuscation of the issues. In spite of its

obvious entertainment qualities, trial gamesmanship by way of obfuscatory tactics is generally offensive to the dignity of the court as an institution and destructive of respect for legal processes. Where life, liberty and protection of communities from crime are the stakes, gamesmanship is out of place. This does not mean that the adversary system is to be in any way discarded, except perhaps in its excesses." ABA Standards Relating to Discovery and Procedures Before Trial, Approved Draft 31 (1970).

■ While withholding the dress and photograph from the defense, the state cross-examined a key defense witness and the defendant extensively concerning the dress. These cross-examinations focused the jury's attention on issues related to the dress, culminating in a dramatic tactic having no material bearing on the charge but well designed to cast doubt upon the credibility of defendant and other defense witnesses.

Defense counsel correctly recognized that the effect could not be cured by a continuance. The prosecution's failure to perform its statutory duty created obvious and substantial prejudice in the conduct of the defense. The only cure for that prejudice is that defendant have a new trial.

■ Because it is an issue which will almost certainly arise upon retrial, we deal briefly with the remaining assignment of error. Defendant contends that the trial court abused its discretion in admitting the victim's pantyhose and dress because there was insufficient evidence to demonstrate that they were in the same condition at the time of trial as they were when the crime was allegedly committed. We find no abuse of discretion. *State v. Anderson,* 242 Or 368, 409 P2d 681 (1966).

Reversed and remanded for new trial.