326 September 10, 2025 No. 803

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JOSE LAHDIEL BRAVO-CHAVEZ,
*Defendant-Respondent.*

Multnomah County Circuit Court
23CR05259; A184815

Cheryl A. Albrecht, Judge.

Argued and submitted January 28, 2025.

Doug M. Petrina, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Brett J. Allin, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

In this expedited appeal, defendant was charged with 28 sex crimes. Defendant's daughter, E, who is now an adult, disclosed that defendant sexually assaulted her up to five times per week throughout her childhood from age six to 17. Before trial, defendant moved for an order requiring the state to elect the specific acts upon which it would rely to prove each of the 28 charges. The trial court granted the motion for pretrial election. The state sought to comply with the order by electing to prove the "first time," the "last time," "[a] time," or the "one time" various acts occurred when the victim was a specified age. At the beginning of trial, and after considering that election as well as other efforts by the state to identify the factual occurrences underlying the charges, the trial court granted defendant's motion to dismiss 22 of the 28 counts for lack of notice sufficient for defendant to prepare a defense. In this appeal, the state seeks reversal of the orders granting the motion for pretrial election and dismissing 22 counts.[1] Because defendants have a right to notice of the charges against them sufficient to prepare a defense, we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

When E was 19 years old, she reported that defendant, her father, had sexually abused her regularly from when she was six years old until she was 17. In interviews and before the grand jury, E disclosed details about the first time the abuse occurred, and she also provided information about other instances of abuse. She explained that the abuse was constant and that it occurred up to five times per week. Much of her testimony consisted of generic descriptions of her father's conduct.

The grand jury indicted defendant on six counts of first-degree unlawful sexual penetration, ORS 163.411 (Counts 1-6); two counts of second-degree unlawful sexual penetration, ORS 163.408 (Counts 7, 8); six counts of first-degree sodomy, ORS 163.405 (Counts 9-14); three counts of second-degree sodomy, ORS 163.395 (Counts 15-17); eight

---

[1] Below, the parties agreed that notice was sufficient as to the remaining six counts (Counts 1, 9, 10, 16, 17, and 18). We offer no opinion on any issue relating to those remaining counts.

counts of first-degree sexual abuse, ORS 163.427 (Counts 18-25); and three counts of second-degree sexual abuse, ORS 163.425 (Counts 26-28). For each set of crimes, the indictment alleged one count per year, and the allegations were framed in the wording of the relevant statutes. Counts 9 and 10 alleged alternative theories of first-degree sodomy based on an incident when E was 11 and Counts 16 and 17 alleged alternative theories of second-degree sodomy based on an incident when she was 13.

Before trial, defendant filed a motion for pretrial election requesting the state to elect the specific acts it intended to rely on to prove each count. Defendant argued that pretrial discovery disclosed "over 1,000 different factual occurrences," and that defendant was "left with no way to know what specific factual occurrence corresponds to each charged count." Relying on *State v. Antoine*, 269 Or App 66, 344 P3d 69, *rev den*, 357 Or 324 (2015) (*Antoine I*), defendant argued that he was entitled to pretrial notice, and that he "should not be required to speculate as to what the State will argue at trial."[2]

In response, the state argued that *Antoine I* was distinguishable because the indictment in that case listed "broad and identical date ranges," but here the indictment listed "a distinct variety of time ranges and actions putting the Defendant on notice of the time period the state is alleging the crimes were committed for each act." The state also argued that the victim "reported that the assaults happened weekly, thus an indictment reflecting the repetitive nature of the abuse, albeit charged in a very conservative fashion—[one] instance per year—is both consistent with the discovery in this case and sufficiently notifies the Defendant of the charges against him."

Nevertheless, the state indicated that it also made elections in response to defendant's motion by specifying nonoverlapping date ranges for each offense. For Count 1,

---

[2] After we affirmed the defendant's convictions in *Antoine I*, the defendant sought post-conviction relief. The post-conviction court granted relief, but we reversed that decision. *Antoine v. Taylor*, 303 Or App 485, 465 P3d 238 (2020) (*Antoine II*). The Supreme Court allowed review and affirmed our decision. *Antoine v. Taylor*, 368 Or 760, 499 P3d 48 (2021) (*Antoine III*). We address *Antoine I* and the Supreme Court's decision in more detail later in this opinion.

the state elected to prove the "first time" defendant sexually penetrated E's vagina with his finger when she was six years old. Under Counts 2 through 8, the state elected to prove "[a] time" defendant did so when E was 7, 8, 9, 10, 11, 12, and 13 years old. The state made similar elections for the other sets of crimes. Under Count 17, the state intended to prove the "one time" defendant engaged in anal sexual intercourse with E when she was 13 years old, and, under Count 18, the state intended to prove the "first time" defendant caused E to touch his penis when she was six. For most of the other counts, the state elected to prove "[a] time" defendant engaged in specified conduct within a one-year date range.

In a written order, the trial court granted defendant's motion for pretrial election. The court stated that selecting one incident within a time frame did not cure the problem of lack of notice because "there are more criminal acts for that time period than were charged in the indictment, allowing the state to introduce multiple acts per count without defendant knowing which of the acts would be specified and argued to the jury." The court expressed concern about "the voluminous other acts evidence that could potentially be admitted." The court stated that "admission of what amounts to other acts evidence in the guise of choosing one event of many to stand in for the rest does not provide sufficient notice for the defendant to prepare a defense." The trial court ordered the state "to elect acts that will serve as the basis for the charges."

In response to the court's order, a few days before trial was scheduled to commence, the state filed a "Notice of Subsequent Pretrial Election." It stated:

"In this case it is impossible for the State to elect with specificity the date or time of each offense precisely because (1) the abuse occurred while the victim was a child (with all difficulties of memory incumbent therein), (2) the offenses occurred years prior to the victim's disclosure, and (3) the abuse was perpetrated on the victim repetitively to the point of habit such that the victim is not able to recall details necessary to distinguish each of the occurrences. To require the kind of specificity that the Defendant seeks would demand more of the victim's memory than is possible

in cases like this and would serve to effectively thwart any prosecution of cases of repetitive sexual abuse over years. In an effort to comply with the Court's order, the State makes the following elections with as much additional specificity as can be provided under the circumstances."

In its "second" election, the state listed each of the counts and indicated that it would prove the "first time" or the "last time" the conduct occurred, the "one time" defendant engaged in anal sexual intercourse, or "[a] time" the conduct occurred when E was a particular age. In its second election, the state emphasized that it would prove the "first time" the conduct occurred for 21 of the counts. For Counts 8 and 28, the state elected to rely on the "last time" the conduct occurred; for Counts 12, 14, 15, and 16, the state would prove "[a] time" the conduct occurred; and, for Count 17, the state would prove the "one time" it occurred. The state also pointed out that some of the counts were alternative theories of sodomy relating to the same incident.

At a hearing at the beginning of trial, the court and the parties addressed the adequacy of the state's election. The state pointed out that the trial court had subsequently ruled that "other acts" evidence was admissible, so any concern about the improper admission of such evidence was not a reason for more specificity. The state also argued that defendant did not intend to advance an alibi defense to specific charges but was instead raising an "all-or-nothing" defense.

Defendant responded that he did not know if he had an alibi defense without further specificity, and he also raised concerns about jury concurrence and a variance problem at trial.[3] Defendant therefore moved to dismiss the charges under Article I, section 11, arguing that he had received "inadequate notice of the specific factual occurrences that the state intends to rely on at trial."

---

[3] Jurors must concur on which occurrence constitutes the crime. *State v. Ashkins*, 357 Or 642, 643, 357 P3d 490 (2015). "[A] defendant's right to jury concurrence arises from Article I, section 11," of the Oregon Constitution. *Id.* at 649. A "variance" problem can occur when there is a difference between the indictment and the state's proof at trial. *State v. Samuel*, 289 Or App 618, 627, 410 P3d 275 (2017), *rev den*, 363 Or 104 (2018). Under Article VII (Amended), section 5(3), defendants have a right to be tried only for the criminal acts as to which the grand jury handed down the indictment. *State v. Long*, 320 Or 361, 370 n 13, 885 P2d 696 (1994), *cert den*, 514 US 1087 (1995).

The trial court required the parties to "sit down" and "go through the grand jury" transcript and identify counts that were supported by more than the victim's non-specific, generic testimony. When the hearing resumed, the state explained that the victim had testified before the grand jury with specificity about six counts. The state indicated that Count 1 (unlawful sexual penetration) and Count 18 (sexual abuse) were based on E's testimony about the first sexual assault and provided additional details specific to those counts. The state explained that Counts 9 and 10 were alternative theories of sodomy based on the incident when defendant forced E to perform oral sex on him. Similarly, Counts 16 and 17 were alternative theories of sodomy based on the incident when defendant engaged in anal sexual intercourse with E. In the end, the state did not connect the remaining counts to any specific factual detail. Defendant was satisfied with the state's election as to the six counts for which the state provided some additional information. However, he argued that the remaining counts should be dismissed on the ground of inadequate notice and because there would be a variance problem at trial.

The trial court ruled that, even after the state's election, defendant had constitutionally inadequate notice for 22 counts because the state did not connect those counts to facts contained in the discovery (Counts 2-8, 11-15, and 19-28), and it dismissed those charges. The trial court acknowledged that "it is very difficult with this type of evidence because to some degree, it [was] incapable of * * * differentiation," but the court concluded that without the identification of further specifics, the state had presented the charges in a way that made them too "amorphous" to defend against. The trial court entered a written order dismissing 22 counts.

## II.  ANALYSIS

On appeal, the state argues that the trial court erred in compelling it to make a pretrial election and in dismissing 22 counts. The state argues that the trial court erred because: (1) a demurrer is the exclusive way to challenge a lack of pretrial notice; (2) the fact that discovery reveals more crimes than charged does not mean there is

inadequate notice; and (3) in a "resident child abuser" case, the state should not be required to make an election until the end of the state's case-in-chief. As we explain below, we are not persuaded that the trial court erred. We begin with some relevant background principles.

A.   *Legal Framework*

Defendants have state and federal constitutional rights to notice of the charges against them. Under Article I, section 11, of the Oregon Constitution, defendants have the right to "demand the nature and the cause of the accusation against" them. Similarly, under the Sixth Amendment to the United States Constitution, defendants have the right "to be informed of the nature and cause of the accusation[.]" Adequate pretrial notice is also required under the Due Process Clause of the Fourteenth Amendment. *Antoine v. Taylor*, 368 Or 760, 771, 499 P3d 48 (2021) (*Antoine III*). "It is a basic component of a defendant's fundamental right to due process that a court may not find him guilty of a crime for which he has not received notice or an opportunity to prepare a defense." *State v. Arney*, 233 Or App 148, 155, 225 P3d 125 (2010) (internal quotation marks omitted).

An indictment must include "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended[.]" ORS 132.550(7). The purposes of an indictment include,

> "(1) to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction."

*Antoine III*, 368 Or at 772 (internal quotation marks omitted).

Normally, an indictment satisfies those purposes if it alleges the commission of a crime in the words of the statute defining the offense. *State v. Hale*, 335 Or 612, 621,

75 P3d 448 (2003), *cert den*, 541 US 942 (2004).[4] If there are problems in the indictment, then a defendant may file a demurrer. *See* ORS 135.630(2) (defendant may demur to an indictment that does not substantially conform to statutory requirements, including the requirements in ORS 132.550(7)); *see also State v. Sanders*, 280 Or 685, 691, 572 P2d 1307 (1977) (in a burglary case, holding that an indictment that failed to specify the defendant's intent at the time of the breaking and entering was subject to demurrer upon the ground that it was not definite and certain).

In *Hale*, the defendant was charged with six counts of aggravated murder alleging that he committed murder to conceal the crime of third-degree sexual abuse, but the indictment did not provide notice of facts and circumstances constituting sexual abuse. 335 Or at 617-18. Defendant demurred seeking information about those offenses, but the Supreme Court held that the trial court did not err in denying the demurrer. As explained by the Supreme Court,

> "[w]e continue to agree with [the] defendant that, in this case, where the record would support more than one incident of third-degree sexual abuse, [the] defendant was entitled to know the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts. However, we do not agree that requiring the trial court to sustain [the] defendant's demurrer to the indictment is the proper (or only) vehicle for ensuring that [the] defendant obtains the information that he seeks. [The d]efendant had other avenues available to him for acquiring that information, such as later moving the court to require the state to elect a specific incident of third-degree sexual abuse, or requesting special jury instructions that clarify the matter."

*Id.* at 620-21.

We addressed a similar issue in *Antoine I*, a sex crime case in which discovery revealed that the victim had described more criminal acts than were alleged in the indictment. 269 Or App at 70. The defendant filed a demurrer

---

[4] *See also State v. Burke et al.*, 126 Or 651, 676, 270 P 756 (1928) ("An indictment for a statutory offense is sufficient if the crime be charged in the words of the statute" so long as "the words of the statute directly and expressly inform the accused of the nature and cause of the accusation against him.").

to the indictment arguing, among other things, that it provided insufficient notice of the charges. *Id.* The trial court overruled the demurrer, and we affirmed. We explained:

> "In this case, as in *Hale*, the record would support multiple incidents of the relevant crime generically charged, here, either sodomy or sexual abuse. However, also as in *Hale*, [the] defendant could have moved to discover the state's election of the specific criminal acts that the state would prosecute at trial, in time for [the] defendant to tailor his defense to those specific incidents. [The d]efendant did file a demurrer before trial but did not later move for the state's election of the specific criminal acts that it would prosecute at trial. That was so even though the state had put [the] defendant on notice at the hearing on the demurrer that it would make its election after it presented its case-in-chief. Because [the] defendant had another avenue to obtain adequate notice of the charges against him, we affirm the trial court's overruling of the demurrer insofar as it was based on lack of notice."

*Id.* at 79 (footnote omitted). In a footnote, we explained that the Supreme Court's reference in *Hale* to "later" moving for an election implied that a defendant could request an election at trial,

> "but elucidation of the state's precise theory at trial does not cure the problem of a lack of pre-trial notice, given that such notice is essential to pre-trial investigation, trial preparation, and litigation of evidentiary issues. Thus, we do not view *Hale* as impeding a defendant from filing a motion for the state's election early in the case."

*Id.* at 79 n 8.

In *State v. Payne*, 298 Or App 411, 421, 447 P3d 515 (2019), we further discussed the difference between a pretrial "notice-based" motion for election and a motion for election made at trial. When an indictment "is sufficient to withstand a demurrer but still may fail to give a defendant adequate notice of the precise charges against him, *** Oregon common law has created the 'motion for election' that gives a defendant more information as to the basis for the charges against him." *Id.* at 417. In contrast to that notice-based motion, "[t]he end-of-trial motion to elect is designed to ensure that the jury agrees as to every necessary element

or concurs on the same occurrence in reaching a verdict on a single count of a charged crime. The right to jury concurrence arises from Article I, section 11, of the Oregon Constitution." *Id.* at 421.

With that legal framework in mind, we consider whether the trial court erred in granting defendant's motion for pretrial election and dismissing 22 counts.

B.   *Motion for Pretrial Election*

We generally "review a trial court's ruling regarding the timing of an election for abuse of discretion." *State v. Magana*, 212 Or App 553, 564-65, 159 P3d 1163, *rev den*, 343 Or 363 (2007). Discretion "refers to the authority of a trial court to choose among several legally correct outcomes." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). "If there is only one legally correct outcome, then 'discretion' is an inapplicable concept." *Id.* In addition, an exercise of discretion "may be predicated on certain subsidiary determinations— either findings of fact or conclusions of law—that trigger their own standards of review." *State v. Burton*, 373 Or 750, 760, 571 P3d 736 (2025) (internal quotation marks omitted).

On appeal, the state argues that the trial court erred in granting the motion for pretrial election because a demurrer is the exclusive way to challenge a lack of pretrial notice. Whether trial courts can require a pretrial election or whether, as the state contends, demurrer is the exclusive way to challenge a lack of pretrial notice, is a legal question we review for errors of law. *See Rogers*, 330 Or at 312 (if there is only one legally correct outcome, then discretion does not apply, and we review for legal error). Here, we reject the state's argument that a demurrer is the exclusive mechanism to challenge a lack of pretrial notice because it is directly contrary to *Antoine I*, in which we explained that a defendant can move for pretrial election to "cure the problem of a lack of pre-trial notice, given that such notice is essential to pre-trial investigation, trial preparation, and litigation of evidentiary issues." 269 Or App at 79 n 8.

The state argues that *Antoine I* and *Payne* contain "incorrect *dicta*" about pretrial elections. In judicial opinions, the term "*dictum*" commonly refers to "a statement

that is not necessary to the decision." *Halperin v. Pitts*, 352 Or 482, 492, 287 P3d 1069 (2012). Although our discussion of a motion for pretrial election in *Payne* was not necessary to the outcome of the case, *see Payne*, 298 Or App at 428-29, our discussion of the same kind of motion in *Antoine I* was not *dicta*. In *Antoine I*, we affirmed the trial court's overruling of the demurrer precisely because the "defendant had another avenue to obtain adequate notice of the charges against him" and he did not do so. 269 Or App at 79. Thus, the availability of a motion for pretrial election was central to the outcome of the case and not *dicta*.

We are bound by our decision in *Antoine I* that a defendant may file a motion for pretrial election. The state does not argue in its opening brief that *Antoine I* was plainly wrong or that we should overrule it.[5] *See State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017) ("We can [overrule precedent] only if we conclude that [it] was 'plainly wrong,' a rigorous standard grounded in presumptive fidelity to *stare decisis*."). As we must, we therefore adhere to *Antoine I*. A defendant can file a motion for pretrial election to obtain notice of the factual occurrence that is the basis for a charge.

We find further support for that conclusion in Justice Duncan's concurring opinion in *Antoine III*, in which she emphasized the importance of a defendant's right to pretrial notice of the charges.

"[I]t is now clear that, under Oregon law, a defendant has a right to notice of the charges against him sufficient to prepare and present his defense and, in cases like this, that right includes the right to pretrial notice of the incidents on which charges are based. *** Consequently, in future cases, there should be no question that a defendant has a right to such notice, that the state must not violate that right, and that a trial court must enforce it.

"When an indictment, read in the context of information provided in discovery, fails to provide notice sufficient for defense counsel to prepare and present his defense, defense counsel should take steps to obtain that notice, as

---

[5] In its reply brief, the state asserts that we should overrule *Antoine I*, but it does not develop the argument in any detail, and we generally do not consider arguments raised for the first time in a reply brief. *State v. Thomas*, 324 Or App 114, 119, 524 P3d 969 (2023). We decline to do so here.

petitioner's defense counsel did in the underlying criminal case. Although case law is unclear regarding what specific steps defense counsel should take, the appellate decisions in the underlying criminal case and this post-conviction case suggest that those steps should include demurring to the indictment and, as a backup, moving for a pretrial election.

"But in the end, the title of defense counsel's filing or motion should not be dispositive when defense counsel alerts the trial court that the state has failed to provide sufficient notice for him to prepare and present a defense. When defense counsel does that, the trial court must compel the state to provide that notice."

368 Or at 785-86 (Duncan, J., concurring).[6] That reasoning is persuasive to us. In a criminal case, the trial court can require the state to make a pretrial election, and a demurrer is not the exclusive way of challenging the lack of pretrial notice.

Turning to the merits of the trial court's decision to grant defendant's motion for pretrial election, the trial court noted that discovery in this case revealed about 1,000 alleged criminal acts over the course of 10 years, and it determined that defendant could not prepare a defense without more information about the factual occurrences that would serve as the basis for each of the 28 counts. The trial court therefore required the state to elect the specific acts that would serve as the basis for the charges.

The trial court did not err or abuse its discretion in so ruling. In *Antoine I*, we determined that the state's charging process failed to provide the defendant with sufficient pretrial notice and the same analysis applies here:

"From discovery, defendant learned that the victim had described more criminal acts than were charged in the indictment, and the state elected the specific criminal acts that it was prosecuting only after the close of its

---

[6] Justice Duncan referred to a motion for pretrial election as a "backup" to a demurrer. Here, the state does not argue on appeal that defendant waived his challenge to pretrial notice by failing to file a demurrer, nor did it raise that issue below. In other cases currently pending before us, including *State v. Van Nelson*, A178355, the state argues that the defendant did waive a claim for pretrial notice by failing to file a demurrer, but that question is not at issue in the instant case.

> case-in-chief. As a result, the state's charging method effectively allowed the state to adduce evidence of multiple criminal acts in each count of the indictment, without defendant knowing which of the acts would be specified and argued to the jury for convictions."

269 Or App at 77. Similarly, here, discovery revealed "more criminal acts than were charged in the indictment," and, for the most part, defendant had no way of "knowing which of the acts would be specified and argued to the jury for convictions." *Id.* Generally, pretrial discovery is "intended to minimize surprise and to eliminate 'trial by ambush.'" *State v. Dickerson*, 36 Or App 479, 485, 584 P2d 787 (1978); *see also State v. Ferraro*, 264 Or App 271, 273, 331 P3d 1086 (2014) (defendants have a right to counsel who can "adequately prepare a defense for trial"). But here, pretrial discovery revealed over 1,000 alleged criminal acts, and, for the most part, it provided no clear way for defendant to investigate which occurrences the state would rely upon at trial. Under those circumstances, denying defendant's motion for pretrial election would have violated his "right to notice of the charges against him sufficient to prepare and present his defense." *Antoine III*, 368 Or at 785-86 (Duncan, J., concurring).

The trial court also expressed concern about the improper admission of "other acts" evidence. Once again, *Antoine I* provides support for the trial court's decision. In *Antoine I*, we pointed out that "the state's method of charging, combined with a late election, allows the state to present evidence of a defendant's multiple bad acts and then to select, mid-trial, which of those will be considered as a charge for the jury to decide." 269 Or App at 77-78. In the instant case, after ruling on the motion for pretrial election, the trial court ultimately determined that "other acts" evidence was admissible, but its concern when ruling on the motion for pretrial election was nevertheless legitimate. In a case like this one, where pretrial discovery revealed over 1,000 alleged criminal acts, it is not clear how defendant could have assessed which bad acts were *other* bad acts without requiring the state to make a pretrial election.

Although the state should "not be forced to make a choice when it cannot intelligently do so," an election must "afford the defendant sufficient time, after the choice has been made, to defend himself properly." *State v. Lee*, 202 Or 592, 607, 276 P2d 946 (1954). Courts "should compel an election when it appears that, if the application is denied, the defendant will be *** prevented from properly making his defense." *State v. Keelen*, 103 Or 172, 179-80, 203 P 306 (1922).

The state argues that in "resident child abuser" cases, in which the victim typically testifies in a generic and undifferentiated way to repeated acts of abuse over a substantial period of time, then "no reason exists to require" the state to make an election before the close of the state's case-in-chief, and the state may not be able to make an intelligent election until after the victim testifies. But that argument ignores a defendant's constitutional and statutory right to notice of the charges. The purpose of a motion for pretrial election is to ensure that defendants have notice "'of the specific criminal acts that the state would prosecute at trial, in time for defendant[s] to tailor [their] defense to those specific incidents.'" *Payne*, 298 Or App at 421 (quoting *Antoine I*, 269 Or App at 79). By contrast, a motion for election made at the end of trial is grounded in the right to jury concurrence. *Id.*

In *Antoine I*, we stated:

> "There are cases in which young children or others with disabilities may not be able to describe a particular incident with specificity and instead may generically describe repeated abuse of a particular type that has occurred over a period of time; in other words, they cannot describe dates, exact locations, or other details to differentiate one incident from the next. However, that type of case should be separately addressed because it presents its own charging challenges. It suffices to say that this is not such a case. Indeed, the state was able to adequately identify discrete instances of criminal conduct for the jury because the victim was able to do so."

269 Or App at 75 n 6. In our view, the instant case is closer to *Antoine I* than to a case involving the testimony of young children or others with disabilities. E is an adult, and in her

grand jury testimony she was able to identify some discrete instances of abuse with enough specificity for defendant to have notice of the factual occurrence underlying the charge. As already explained, "such notice is essential to pre-trial investigation, trial preparation, and litigation of evidentiary issues." *Id.* at 79 n 8.

We understand the state's concern about the difficulty of making a pretrial election in "resident child abuser" case. "Other jurisdictions have dealt with the 'undifferentiated evidence' dilemma in child sexual abuse cases by treating a single alleged crime as a continuing or aggregated offense, or by enacting 'continuing child sexual abuse' statutes." *State v. Ashkins*, 357 Or 642, 657 n 11, 357 P3d 490 (2015).[7] To the extent there is a problem of providing notice sufficient to prepare a defense in such cases, the solution likely lies with the legislature, not the courts. Focusing here on whether the trial court erred or abused its discretion in granting defendant's motion for pretrial election and relying in particular on the analysis in *Antoine I*, and Justice Duncan's concurring opinion in *Antoine III*, we conclude that it did not.

C.   *Motion to Dismiss*

We "review an order dismissing an accusatory instrument for abuse of discretion." *State v. Freeman*, 127 Or App 640, 644, 873 P2d 1107 (1994); *see also State v. Hewitt*, 162 Or App 47, 52, 985 P2d 884 (1999) (reviewing for abuse

---

[7] *See, e.g.*, Cal Penal Code § 288.5(a) (California statute defining the crime of "continuous sexual abuse of a child"); *see id.*, § 288.5(b) ("To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."). Other states have enacted similar statutes. *See, e.g.*, Ariz Rev Stat Ann § 13-1417 (Arizona statute defining the crime of continuous sexual abuse of a child); Del Code Ann tit 11, § 776 (Delaware statute defining the crime of continuous sexual abuse of a child); Haw Rev Stat § 707-733.6 (Hawaii statute defining the crime of continuous sexual assault of a minor under the age of 14 years); Iowa Code § 709.23 (Iowa statute defining the crime of continuous sexual abuse of a child); Md Code Ann, Crim Law, § 3-315 (Maryland statute defining the crime of "a continuous course of conduct" with a victim who is under the age of 14 years); NY Penal Law § 130.75 (New York statute defining the crime of "course of sexual conduct against a child in the first degree"); Tenn Code Ann § 39-13-518 (Tennessee statute defining the crime of continuous sexual abuse of a child); Tex Penal Code § 21.02 (Texas statute defining the crime of continuous sexual abuse of young child or disabled individual); Wis Stat Ann § 948.025 (Wisconsin statute defining the crime of engaging in repeated acts of sexual assault of the same child).

of discretion a trial court's dismissal order when the state declined to proceed to trial before it could appeal an adverse pretrial ruling). Here, we conclude that the trial court's dismissal of 22 counts was within the permissible range of its discretion.

As noted above, in response to the order granting the motion for pretrial election, the state elected to prove "the first time," "the last time," "[a] time," or "the one time" the offense occurred within a specified time range. Although the state made that election in an effort to provide specificity, after the prosecutor and defense counsel reviewed the grand jury transcript together to identify evidence that might connect to each charge, the state could connect E's grand jury testimony to six of the counts, but not to 22 others. During her grand jury testimony, E testified about the first time the abuse occurred and her description of that incident provided the basis for the state's charges in Count 1 (unlawful sexual penetration) and Count 18 (sexual abuse). E testified about incidents that underlay the alternative charges of first-degree sodomy in Counts 9 and 10 and second-degree sodomy in Counts 16 and 17. However, the state did not link E's remaining grand jury testimony to specific counts in the indictment.

Unlike, for example, the charges in *Antoine I*, 269 Or App at 74, where, at trial, the state chose "factually distinct, specific criminal acts by adding to each of the counts both a general description of the type of sexual contact and a location where it occurred," in this case the state did not make a similar pretrial election for 22 of the counts. Especially with respect to the counts alleging "[a] time" defendant engaged in proscribed conduct, allowing the state to proceed on charges that were untethered from distinct factual occurrences created a risk of future double jeopardy problems, *see State v. Dodge*, 373 Or 156, 158, 563 P3d 339 (2025), and it also created a risk of an impermissible variance between the indictment and the state's proof at trial, *see State v. Johnson*, 342 Or App 278, 279, ___ P3d ___ (2025) (reversing and remanding conviction because it violated the defendant's constitutional right to be tried on the same factual theory on which the grand jury based its

indictment). We cannot say that it was outside the range of the trial court's discretion to dismiss Counts 2 to 8, 11 to 15, and 19 to 28 of the indictment because the state did not provide any additional detail as to the factual basis for those counts.[8]

The trial court dismissed those counts without prejudice, so the state is not precluded from recharging the defendant in the event that further developments enable the state to present charges based on specific factual occurrences. But because the state did not connect 22 counts to the grand jury testimony or other pretrial discovery, the trial court did not abuse its discretion in dismissing those counts.

We emphasize that the trial court did not dismiss the indictment outright. It provided an opportunity for the state to hold defendant to account for some of the accusations against him, but in a way that did not violate defendant's constitutional right to notice of the nature and the cause of the accusations, as required by Article I, section 11. The trial court did not abuse its discretion in dismissing without prejudice 22 of the 28 counts.

Affirmed.

---

[8] We caution that our opinion should not be construed to suggest that an indictment that alleges "a time," or "the first time," or "the last time," or "the one time" an event occurs within a date range will *never* be sufficient to provide notice to a defendant. The parties agreed that defendant had sufficient notice for six counts. The question before us is whether the trial court abused its discretion in dismissing counts that were not tied to distinct factual occurrences. Given that the state did not connect those counts to specific facts, despite the trial court's order granting the motion for pretrial election, we conclude the trial court did not abuse its discretion in granting the motion to dismiss.