Argued and submitted December 20, 1996, reversed in part; otherwise affirmed
March 19, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY FRANK WELLS,
*Appellant.*

(95-388C; CA A91355)

935 P2d 447

Eric M. Cumfer, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Sally L. Avera, Public Defender.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals his conviction for theft in the first degree, ORS 164.095,[1] ORS 164.055(1)(d), criminal trespass in the second degree, ORS 164.245, and being a felon in possession of a firearm, ORS 166.270(1). He challenges the trial court's denial of his motion for judgment of acquittal on all three charges. We reverse his convictions for theft and felon in possession of a firearm and affirm his conviction for criminal trespass.

Defendant was convicted based primarily on circumstantial evidence. The evidence presented centered around defendant's activities on January 31, 1995, as observed by various witnesses in the area of Twickenham.[2] Stating the facts in the light most favorable to the state,[3] the evidence shows the following: Defendant was a passenger in a red pickup truck that had a white canopy. The driver of the pickup was defendant's brother, Billy Wade Wells. There was also a woman passenger in the pickup, Laverne Sisson. The trio had driven back and forth on county roads in Wheeler County throughout the day on January 31, 1995, and had also stopped at a couple of places. At approximately 5:00 p.m., Blair Stockton returned to his home adjacent to Rowe Creek Road and noticed that a rifle had been stolen. He telephoned the sheriff and his neighbors about the theft. Through his phone calls, Blair learned that a red pickup had been seen at his house earlier in the day. As Blair was conversing on the phone at approximately 9:30 p.m., he saw a

---

[1] ORS 164.095 provides:

"(1) A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"(2) 'Receiving' means acquiring possession, control or title, or lending on the security of the property."

The alleged theft was theft in the first degree because the stolen property was a firearm. ORS 164.055 (1)(d).

[2] The Twickenham area lies between Fossil and Mitchell.

[3] Because this appeal is based on a the trial court's denial of a judgment of acquittal, the state is entitled to have the evidence presented considered in the light most favorable to it and also is entitled to all reasonable inferences that may reasonably be drawn from the evidence. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den* 514 US 1005, 115 S Ct 1317, 131 L Ed 2d 198 (1995).

small pickup go by on the road. Blair, his brother Martin Stockton, and Merle Boehlke, the foreman of the Diamond C Ranch, decided to investigate.

At the entry way to the Diamond C Ranch corrals from Rowe Creek Road, there is a gate and a "No Trespassing" sign. On that evening, the gate was open. Martin was the first to arrive at the corrals. He saw a red pickup truck in the vicinity when he arrived, and he went to the tack room near the corrals to see if anything had been stolen. He found the room undisturbed. When Boehlke arrived, he saw the red pickup drive past him. He signaled for it to stop, but it went by him. Blair then pulled his vehicle in front of the pickup, and the pickup hit Blair's vehicle, stopping the pickup from proceeding further.

Wells and defendant got out of the pickup, whereupon Blair fired a pistol into the ground and then pointed it at them, telling them that they were being stopped for trespassing and that the sheriff was on his way. Boehlke approached and told them that they were trespassing and that there was a gun missing from Blair's residence. Blair and Boehlke did not see any weapons in the possession of Wells or defendant. Wells offered to allow Blair and Boehlke to search his truck, but they declined, wanting to wait for the sheriff to arrive. After some heated discussion, Wells and defendant got back into the truck and drove away. As they left, Blair shot at one of their tires and then telephoned the sheriff and other neighbors, giving a description of the pickup and its license number.

Matt Williams, a state highway worker, received a telephone call about the red pickup. He began to drive on Girds Creek Road, which connects with Rowe Creek Road, looking for the pickup, and passed it going the other way. After Williams passed the pickup, he lost sight of it and turned around to follow it. He saw it next at a point along the road where it had stopped. As he pulled up behind the pickup, Wells and defendant got out and walked back towards Williams. Wells and defendant told Williams they needed a tire jack, and Williams told them that some people in Twickenham were looking for them. Wells and defendant "cussed" at Williams and drove off in the direction of Crook

County. The state offered evidence from Williams as to where the pickup had stopped.

Ron Markus testified that he found a stolen rifle on February 3, 1995, about six feet off the shoulder of Girds Creek Road. A trier of fact could reasonably infer that the rifle was found in the location where the pickup was stopped when Williams saw it. The rifle is owned by Don Cole, who testified that it had been stolen from him in December 1994 in Crook County.

Defendant was subsequently arrested and tried for the theft by possession of Cole's rifle, felon in possession of a firearm, and criminal trespass. At the close of the state's evidence, he moved for judgments of acquittal. As to the charges of theft by possession and felon in possession of a firearm, he argued that there was insufficient evidence on which to convict him of possession of Cole's rifle. The court rejected his argument, ruling that

> "there's certainly evidence that a reasonable juror could find, based on the direct, the physical, and the circumstantial evidence, and making reasonable inferences, that the State has proven those charges."

Defendant assigns error to that ruling.

■     On appeal, defendant argues that, even assuming that Cole's rifle had been in the pickup, the state did not present any evidence to give rise to an inference that defendant, as distinguished from his brother or Sisson, possessed the rifle. The state responds by arguing that defendant did not preserve that argument at trial and contends that defendant only argued that the evidence was insufficient to prove that "anyone" in the pickup ever possessed the rifle. Under the indictment, the state is required to prove the element of possession in order to prove the charges of theft and felon in possession of a firearm. Defendant raised the issue to the trial court of whether the state had proved that any occupant of the pickup possessed the rifle. Thus, the state was on notice that "possession" was the central issue of the case and was not ambushed, misled or denied an opportunity to respond to that issue. *See State v. Hitz*, 307 Or 183, 188-89, 766 P2d 373 (1988) (explaining that raising the issue is the most essential

part of preserving error for purposes of appeal). We conclude that defendant's argument is preserved.

■ ■ Possession may be actual or constructive. *State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968). Because there is no evidence that defendant actually possessed the rifle, our inquiry focuses on the sufficiency of the evidence of constructive possession. To prove constructive possession, the state must offer evidence that defendant knowingly exercised control over, or had the right to control, the rifle. *State v. Garcia*, 120 Or App 485, 487-88, 852 P2d 946 (1993).

■ At best, the evidence shows that defendant was present at the time the rifle could have been in the pickup. However, the evidence does not support an inference that defendant exercised constructive possession over the rifle while he was in the pickup. No witness ever saw any of the pickup's occupants with any rifle in his or her possession, and no witness ever saw any rifle in the pickup. There is no evidence that defendant owned the pickup or that he exercised control or had the right to exercise control over any gun that was in the pickup. Finally, there is no evidence that he was acting in concert with Wells, the owner of the pickup, insofar as joint retention of the rifle was concerned. Merely being present in the same vehicle is not enough to make defendant guilty of constructive possession of a stolen rifle in the possession of another. We conclude that the state failed to prove that defendant actually or constructively possessed the stolen rifle, and accordingly, the trial court erred when it denied defendant's motion on the charges of theft and felon is possession of a firearm.

Defendant also moved for a judgment of acquittal on the criminal trespass charge,[4] which the trial court also denied. His argument centered on the fact that the indictment charged him with trespassing "½ mile North of the Diamond C Ranch Headquarters, 40969 Rowe Creek Rd., on the West side of Rowe Creek Rd., within Wheeler County" and the evidence demonstrated that he trespassed one-half mile south of the headquarters. The trial court ruled:

---

[4] ORS 164.245 provides that "[a] person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in or upon premises."

"[G]iven the information regarding the incident that occurred in that area, given the fact that a half mile either way, the only thing on the left hand side of the road, based on the evidence here, is that tack area, I don't find that the pleading defect is terminal."

Defendant also assigns error to that ruling.

Defendant argues that the court erred because the evidence produced at trial about the location of the trespass materially varies from the allegation in the indictment. ORS 135.715 provides:

"No accusatory instrument is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

In *State v. Cook*, 154 Or 62, 59 P2d 249 (1936), the court analyzed the predecessor statute to ORS 135.715 and set forth the test to determine when a variance between what is alleged in an accusatory instrument and what is proven is material or fatal. It stated:

"A variance as to a matter which is not material is not fatal. Under the modern practice, a variance is not material unless it misleads the accused in making his defense or may expose him to the danger of again being put in jeopardy for the same offense. The purpose of the rule as to a variance is to avoid surprise * * *. 'Variance between allegation and proof which does not go to the extent of showing that the offense proved is not the offense charged is immaterial.' " *Id.* at 66-67 (citations omitted).

In *State v. Russell*, 231 Or 317, 372 P2d 770 (1962), the court appears to have adopted a second test for the materiality of a variance between pleading and proof. It said: "Whether or not the [variance] in the indictment before us is material depends upon whether the [incorrect information] can be stricken from the indictment without rendering the pleading vulnerable to demurrer on the ground it no longer states a crime." *Id.* at 319.

■ There is no question that defendant knew before trial where the state claimed that he had made the unlawful entry. Defense counsel acknowledged that he had been taken

to that location by Blair during pretrial discovery. The testimony was uncontroverted that defendant had entered at that location, and his main defense was that he believed that the corrals were open to the public. Defendant does not claim that he would have a different defense had the state properly pled the location of the trespass. Thus, there is no persuasive evidence that he was misled by the mistake in the indictment in making his defense.

Also, there is no danger of defendant being put in jeopardy for the same offense. In *State v. Dane*, 103 Or App 420, 423-24, 797 P2d 1069 (1990), we held that the defendant in a second prosecution for the identical factual circumstances could not be charged twice for the same offense. We said, "[W]e will not ignore the 'objective reality' of the situation and say that the two prosecutions were for different offenses, when, in fact, they were not." *Id.* at 423-24. Here, the indictment and pretrial discovery served to identify the precise conduct that the state maintains constituted the trespass.

Regarding the question of whether the inaccurate information can be stricken from the indictment without subjecting it to demurrer, the indictment alleges, in pertinent part, that defendant committed the crime of trespass by "unlawfully and knowingly enter[ing] upon the premises located approximately ½ mile North of the Diamond C Ranch Headquarters, 40969 Rowe Creek Rd., on the West side of Rowe Creek Rd., within Wheeler County." If the inaccurate information is excised, the allegation reads that defendant "unlawfully and knowingly enter[ed] upon the premises located on the West side of Rowe Creek Rd., within Wheeler County."

■ "Premises," as defined in ORS 164.205(6), "includes any building and any real property, whether privately or publicly owned." Generally, it is sufficient to describe a criminal offense in the words of the statute, unless the language of the statute is not in itself sufficient to apprise the defendant of the particular circumstances that make his conduct criminal and the availability of discovery is unlikely to inform the defendant of the specific conduct that the state intends to prove. *State v. Sanders*, 280 Or 685, 688-90, 572

P2d 1307 (1977). Here, the indictment, if modified, informs defendant that he unlawfully entered premises lying west of Rowe Creek Road in Wheeler County, and his discovery effort resulted in learning the precise location.

Nonetheless, defendant argues that our holding in *State v. Trauth*, 80 Or App 393, 722 P2d 47 (1986), requires us to reverse his conviction for criminal trespass. In *Trauth*, the state indicted the defendant for trespassing in a national forest in an area designated as "Unit # 6 of the Squaw Tree Timber Sale." The evidence presented by the state demonstrated that the defendant had walked down Forest Road 2046 000, which was closed to the public, to Unit #7 of the sale, which was open to the public. Defendant was stopped in Unit #7 by officials before he reached the boundaries of Unit #6. We reversed the defendant's conviction and held that the state did not present any evidence to show that the defendant trespassed on Unit #6, as alleged in the charging instrument.

The facts in *Trauth* are inapposite to the facts in this case. *Trauth* is an example of where the state failed to prove any unlawful entry on the premises alleged in the indictment. Although the state could have apparently alleged and proven a trespass on Road 2046 000, it chose not to make that act the subject of the charge. Once the allegation of Unit # 6 is stricken, there is no longer any allegation in the accusatory instrument that identifies any premises. Necessarily, the variance between the pleading and the lack of evidence of entry on Unit # 6 was material.

In this case, the state alleged and proved that defendant unlawfully entered another's property west of Rowe Creek Road in Wheeler County.[5] There was no lack of proof on the element of ORS 164.245 of an entry on premises. Rather, the issue at trial focused on whether defendant had the requisite *scienter* when he entered those premises. Because the indictment stated a crime without the erroneous

---

[5] In *State v. Johns*, 20 Or App 249, 531 P2d 282 (1975), we upheld an attack against an accusatory instrument on the ground that it lacked specificity of the location of a trespass. The instrument alleged that the trespass had occurred one mile east of an intersection "on the south side" of a road. We said, "A person of common understanding would interpret such a description as meaning that the trespass occurred in an area immediately adjacent to the road." *Id.* at 252.

information *and* defendant was not misled or prejudiced in any manner as to where the alleged trespass occurred, the trial court did not err in denying his motion for a judgment of acquittal on the charge of trespass.

Convictions for theft in the first degree and felon in possession of a firearm reversed; otherwise affirmed.