No. 366 May 6, 2026 273

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DERREK VAN NELSON,
*Defendant-Appellant.*

Lane County Circuit Court
20CR13711; A178355

Charles M. Zennaché, Judge.

Argued and submitted April 30, 2024.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

Ortega, P. J., concurring.

Hellman, J., concurring.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for two counts of first-degree sodomy, ORS 163.405, and two counts of first-degree sexual abuse, ORS 163.427, for his conduct against a child under the age of 12.[1] On appeal, he raises seven assignments of error. First, he challenges the trial court's pretrial ruling allowing the state to introduce evidence that he had removed his ankle monitor. Second, he challenges the denial of his motion for a pretrial election. Third, he challenges the denial of his mistrial motion. In his last four assignments of error, defendant challenges the proportionality of his sentence. As explained below, we conclude that any error in admitting evidence about defendant's ankle monitor was harmless. We further conclude that the trial court did not err when it denied his motion for an election or his mistrial motion. Finally, we conclude that defendant's sentence does not violate his rights under the state or federal constitutions. Accordingly, we affirm.

Because defendant's assignments of error implicate different standards of review and different facts, we state the relevant facts within each section that follows.

## I.   PRETRIAL MOTION

In his first assignment of error, defendant argues that the trial court abused its discretion when it "admitted evidence that defendant had removed his ankle monitor and failed to appear for the first scheduled trial date."

We need not decide if the trial court abused its discretion because we conclude that any error was harmless.

> "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict? The correct focus of the inquiry regarding affirmance despite error is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling."

*State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). "That conclusion is not a reflection of how we view the weight of the

---

[1] The jury found defendant guilty on all eight counts. The trial court merged the guilty verdicts on counts 2, 4, 6, and 8 with the guilty verdicts on counts 1, 3, 5, and 7, respectively.

evidence of [the] defendant's guilt, but rather a legal conclusion about the likely effect of the error on the verdict." *State v. Schiller-Munneman*, 359 Or 808, 819, 377 P3d 554 (2016).

Here, the state filed a pretrial motion *in limine* "to Admit Evidence of Consciousness of Guilt." Specifically, the state argued:

> "Prior to trial, defendant was released on a release agreement and required to wear an ankle monitor. On the morning of his trial, the defendant removed his ankle bracelet and was wanted for a period of time before turning himself in at the jail. Detectives located the defendant's ankle bracelet cut off on the side of the road in the Florence area later that day."

After the trial court granted the motion, defendant testified that he cut off his ankle bracelet because he "was scared of getting life in prison."

We conclude that any error in admitting the evidence was harmless because, even if defendant testified "in response to the erroneously admitted evidence," defendant ultimately "testifie[d] about the same facts" and the evidence was "not an unlawfully compelled confession." *State v. Matheson*, 220 Or App 397, 405, 186 P3d 309 (2008); *see also id.* ("The erroneous admission of evidence does not vitiate the voluntariness of the defendant's later decision to testify in his own behalf."); *State v. McGinnis*, 335 Or 243, 253-54, 64 P3d 1123 (2003) ("Because the statements at issue here were not compelled in any way, their admission into evidence did not vitiate the voluntariness of [the] defendant's subsequent decision to testify in his own behalf. Fully aware of the advantages and disadvantages of testifying, [the] defendant chose to take the stand and to meet the state's evidence. Under such circumstances, there is no reason to exclude [the] defendant's testimony from a review of the record for harmless error.").

## II.   PRETRIAL ELECTION

In his second assignment of error, defendant argues that the trial court erred when it denied his motion for a pretrial election, which sought to require the state to provide him with specific details about the eight counts of sexual

crimes against his former partner's six-year-old daughter, for which he was charged.

The indictment charged defendant with first-degree sodomy and first-degree sexual abuse using the language of the statutes, ORS 163.405(2) and ORS 163.427(1)(a)(A), and "on or about" dates.[2] Although the discovery provided defendant additional details about the charged conduct, the victim described the alleged abuse in general terms, and her statements, along with other discovery, indicated only generally when and where the alleged abuse took place.

As he argued to the trial court, defendant argues on appeal that the indictment and the discovery—considered together—denied him the ability to mount a viable defense to the charges and that as a result he was entitled to pretrial election by the state.

The state raises four arguments in response. First, the state argues that the concept of pretrial election is based on a misreading of the case law and does not, in fact, exist. Instead, the state argues, demurrer is the correct, and indeed only, way to obtain constitutionally required pretrial notice. Second, the state argues that pretrial election is limited to litigation of prior bad acts and not available in cases involving repeated sexual abuse—what the state terms "resident abuser" cases. Third, the state argues that, even if pretrial election exists, defendant waived his right to seek pretrial election when he did not first demur to the indictment. And fourth, the state argues that, even if pretrial election exists and defendant did not waive it, the trial court did not err because defendant received all the notice to which he was constitutionally entitled.

As we considered the state's arguments regarding the necessity of a demurrer, we identified an inconsistency between the requirement in ORS 135.630 to analyze a demurrer "upon the face" of the "accusatory instrument" and our case law, which permits consideration of discovery in the consideration of a demurrer in some circumstances. 349 Or App at 294-95 (Hellman, J., concurring). We asked

---

[2] Specifically, the indictment alleged that defendant committed Counts 1 and 2 "on or about January 6, 2020," Counts 3, 4, 7, and 8 "on or about July 1, 2019," and Counts 5 and 6 "on or about February 16, 2020."

the parties for supplemental briefing as to whether that inconsistency could be reconciled and, if not, whether resolution of this case required us to overrule any line of case law.

        In his supplemental briefing, defendant pointed out that he did not file a demurrer and argued that, as a result, we do not need to address any inconsistencies, nor do we need to overrule any cases, to rule in his favor. Defendant's position is that this case is controlled by *State v. Bravo-Chavez*, 343 Or App 326, 578 P3d 725, *rev den*, 374 Or 437 (2025), and *State v. Antoine*, 269 Or App 66, 344 P3d 69, *rev den*, 357 Or 324 (2015) (*Antoine I*). In its supplemental brief, the state urges us to overrule the holdings in *Bravo-Chavez* and *Antoine I*, both of which conclude that a motion for pretrial election exists. The state further argues that the purported inconsistencies in our demurrer case law can be explained by the difference between a theoretical examination of the discovery (a permissible consideration) and an inquiry based on the actual discovery (an impermissible consideration). Having summarized the parties' positions on the legal issues in this case, we now turn to our analysis.

A.   *Constitutional Provisions*

        A criminal defendant has both a constitutional and a statutory right to pretrial notice of the charges against them. Under Article I, section 11, of the Oregon Constitution, a defendant has a right to "demand the nature and cause of the accusation against him." Relatedly, the Sixth Amendment to the United States Constitution grants a defendant the right "to be informed of the nature and cause of the accusation." And the Fourteenth Amendment guarantees a defendant the right to due process, which includes a right to adequate pretrial notice of the charges against them. *Bravo-Chavez*, 343 Or App at 332.

        Pretrial notice must be "sufficient" to allow a defendant to "prepare and present [a] defense." *Antoine v. Taylor*, 368 Or 760, 785-86, 499 P3d 48 (2021) (*Antoine III*) (Duncan, J., concurring).[3] To be sufficient, notice must give a defen-

_____

[3] We refer to the 2021 case as *Antoine III* for consistency with our case law and litigants' references to that case. We do not rely on *Antoine v. Taylor*, 303 Or

dant the ability to conduct meaningful pretrial investigation, engage in trial preparation, and prepare for litigation of evidentiary issues. *Antoine I*, 269 Or App at 79 n 8.

### B.  *Pretrial Election*

In *Bravo-Chavez*, we held that the law permits a defendant to file a motion for a pretrial election to seek constitutionally required pretrial notice, when an indictment and the pretrial discovery together do not provide notice. 343 Or App at 337. We decline to overrule that holding from *Bravo-Chavez*, as the state urges, because our holding was not based on an incorrect interpretation of precedent, as the state asserts. Relying primarily on *State v. Smith*, 182 Or 497, 188 P2d 998 (1948), the state argues that a demurrer is the exclusive mechanism by which a defendant can seek pretrial notice, and that our holdings to the contrary are plainly wrong.[4] But a close examination of *Smith* demonstrates that the state's reliance is misplaced.[5]

In *Smith*, the defendant was charged with having used "force, threats, and intimidations" to coerce another person from "continuing and performing his work." *Id.* at 499. The defendant demurred to the indictment "on the ground that it did not state facts sufficient to constitute a crime." *Id.* at 500. The trial court overruled the demurrer, and the defendant was convicted. *Id.* On appeal, the defendant argued that in order to state a crime, the indictment needed to include additional facts, including his specific acts that constituted the "alleged force, threats and intimidation." *Id.* That is, the defendant claimed that the indictment had not stated a crime due to the lack of factual detail regarding his alleged actions.

The Supreme Court rejected that framing. Instead, the court drew a distinction between two types

---

App 485, 465 P3d 238 (2020), *aff'd*, 368 Or 760, 499 P3d 48 (2021), which is commonly referenced as *Antoine II*, in this opinion.

[4] The other cases that the state cites simply quote from *Smith* and do not engage in any independent legal analysis on the issues presented in this case.

[5] As we have previously recognized, an analysis of *Smith* is not without its challenges because it is a case that endorses competing principles without any reconciliation between them and contains a "twilight zone" between its *dictum* and holding. *See State v. Wright*, 167 Or App 297, 305-06, 999 P2d 1220, *adh'd to as modified on recons*, 169 Or App 78, 7 P3d 738, *rev den*, 331 Or 334 (2000).

of constitutionally based notice challenges. The first is a claim that the indictment fails to state a crime, which asks whether the indictment includes all the essential elements of a criminal offense. *Id.* at 504. To provide proper notice to defendants, "the act or omission charged as a crime [must be] clearly and distinctly set forth, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." *Id.* at 502. In other words, the indictment must allege the elements in a way that would allow anyone to read it and understand what crime the state believed they had committed; *to wit*, "Oh, the state claims that I've committed a burglary." Statutes are presumed to be understandable by the public, *see, e.g.*, *State v. Illig-Renn*, 341 Or 228, 242, 142 P3d 62 (2006), so that is why "it is usually sufficient to describe the offense in the words of the statute." *Smith*, 182 Or at 502.

The second kind of constitutionally based notice that *Smith* recognized arises when a defendant seeks to require the state to inform them of the conduct that is alleged to have given rise to the criminal charge. *Id.* at 505-06 (citing *State of Oregon v. Packard*, 4 Or 157, 160 (1871), and *State of Oregon v. Dougherty*, 4 Or 200, 205 (1871)). In other words, the defendant wants to know what acts they allegedly performed that were criminal; *to wit*, "Oh, the state claims that on October 12, 2025, I broke into the house on Deer Park Lane to steal things inside." *Smith* concluded that that kind of notice was not before it, based on the defendant's framing of the issue on appeal. *See id.* at 505-06 (determining that the "value of [*Packard*] as authority here is weakened" because it did not address whether the indictment "failed to state facts sufficient to constitute a crime").

*Smith* recognized that the indictment at issue lacked factual specificity of the defendant's conduct, and that the defendant was entitled to know that information. *Id.* at 506 ("We agree that, in the case at bar, the indictment should have set forth clearly and distinctly the particular acts, words, or other coercive matters constituting the alleged force, threats, and intimidations."). But the court went on to hold that as to the defendant's particular challenge, "[t]he

facts stated, however, following the language of the statute, did constitute a crime." *Id.* at 506-07.

*Smith* did state that "[t]he opportunity" for a demurrer "meets the requirements" of Article I, section 11. *Id.* at 507. But *Smith* did not explicitly hold that a demurrer is the exclusive pathway. Notably, *Smith* left open the possibility that there may be avenues to pursue beyond a demurrer to challenge a lack of factual specificity in the indictment. *Smith* held that "[t]he failure of the indictment to set forth the particular acts constituting the offense charged is waived by not making timely objection thereto, *as, for example,* by failing to demur upon that ground before pleading to the merits." *Id.* at 507-08 (emphasis added).

In sum, in the 78 years since *Smith* was decided, the Supreme Court has never explicitly held that a demurrer is the sole pathway available to seek further notice from the state, when the indictment is sufficient to charge a crime, but a defendant lacks necessary notice of their alleged criminal conduct. Nor has the Supreme Court ever explicitly held that a demurrer must be filed before a defendant can seek that additional notice. Instead, Oregon common law has developed to fill in the "twilight zone" in *Smith*'s reasoning. That common law permits defendants to file a pretrial motion for election independent of a demurrer. *See State v. Payne (A163092)*, 298 Or App 411, 417, 447 P3d 515 (2019) (recognizing that Oregon common law has created the pretrial "motion for election" that gives a defendant more information as to the basis for the charges against them).

We also reject the state's argument that pretrial election is limited to cases in which a defendant wants to litigate prior bad acts and is unavailable in certain types of cases, such as what the state refers to as "resident abuser" cases. We implicitly held as much in *Bravo-Chavez*, and we make that holding explicit here. Notice is a constitutional requirement; thus, the availability of pretrial election is not dictated by the type of charges or the defense theory. Instead, pretrial election is available when, after a case-specific analysis, the indictment and discovery do not provide defendant with "notice of the charges against him

sufficient to prepare and present his defense." *Antoine III*, 368 Or at 785-86 (Duncan, J., concurring).[6]

### C. *Demurrers versus Motions for Pretrial Election*

Because the law permits a defendant to file a motion for pretrial election, we now turn to the state's argument that defendant waived the ability to seek notice through a pretrial election because he failed to file a demurrer. We reject the state's argument because a demurrer and a pretrial election address different ways in which a defendant believes the state has failed to provide constitutionally required pretrial notice.

When a defendant believes that the indictment on its face has not provided the required notice, they can pursue a demurrer under ORS 135.630. As relevant in the notice context, a demurrer to an indictment can be based on two subsections of the statute.[7] The first is ORS 135.630(2), which permits a demurrer on the basis that the indictment does "not substantially conform to the requirements of [ORS 132.550(7)]."[8] ORS 132.550(7) sets forth the require-

---

[6] The analysis of whether to grant a pretrial motion does not involve a balancing test between the prosecutor's ability to elect at the time the defendant makes the motion and the defendant's need for the election as *State of Oregon v. Lee*, 202 Or 592, 276 P2d 946 (1954), and *State v. Yielding*, 238 Or 419, 395 P2d 1272 (1964), could be read to suggest. Such a balancing test does not square with the constitutional basis for the motion. A defendant's need for the election is not measured along a sliding scale of need. It is a binary choice—they either need the information to provide constitutionally adequate pretrial notice of the charges against them, or they do not. And the answer to that question does not depend upon the ability of the state to "make an intelligent choice." *Yielding*, 238 Or at 423. The answer is whether a defendant needs the election to be able to "sufficient[ly] prepare and present his defense." *Antoine III*, 368 Or at 785-86 (Duncan, J., concurring).

Notably, neither *Lee* nor *Yielding* engaged in any constitutional analysis regarding when an election was appropriate. Because both cases were decided before the substantial statutory revisions to Oregon criminal procedure in 1973, the observations in those cases about trial practice have limited practical application to trials conducted today.

[7] ORS 135.630(6), which permits a demurrer to an "accusatory instrument" that "is not definite and certain," does not apply to indictments. *Wright*, 167 Or App at 299 n 1.

[8] Although ORS 135.630(2) lists several statutes that can form the basis of a demurrer, we focus only on ORS 132.550(7) as relevant to a challenge based on notice. *State v. Morgan*, 151 Or App 750, 753 n 4, 951 P2d 187 (1997), *rev den*, 327 Or 82 (1998) ("A demurrer to an indictment on the ground that it is not sufficiently definite or certain is properly raised under ORS 135.630(2), which, by

ment for the indictment to contain a "statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended[.]" The second is ORS 135.630(4), which permits a demurrer on the basis "[t]hat the facts stated do not constitute an offense."

Although a demurrer is a potentially powerful pleading, its scope is exceedingly narrow. For one, consideration of a demurrer is based on the face of the indictment alone. ORS 135.630; *State v. Morgan*, 151 Or App 750, 755, 951 P2d 187 (1997), *rev den*, 327 Or 82 (1998) (concluding that "a demurrer cannot be sustained on basis of facts extrinsic to the indictment" because ORS 135.630 permits demurrer based only "on the face of the indictment"). In addition, "[g]enerally, an indictment is sufficient *** to withstand a demurrer if it tracks the pertinent wording of the statute defining the crime." *State v. Fair*, 326 Or 485, 490, 953 P2d 383 (1998).

That does not mean, however, that an indictment can simply restate the statute. As the Supreme Court has also held, an indictment must include "a statement of the particular circumstances of the crime *** in order to charge the defendant with having committed specific acts bringing him within the condemnation of the statute." *Id.* (internal quotation marks omitted); *see also State v. Burke et al.*, 126 Or 651, 676, 269 P 869, 270 P 756 (1928) (explaining that "[a]n indictment for a statutory offense is sufficient if the crime be charged in the words of the statute" so long as "the words of the statute directly and expressly inform the accused of the nature and cause of the accusation against him"). However, in practice, few indictments will be so patently deficient on their face that they will fall to a demurrer.[9]

Given those holdings, counsel may validly determine that a demurrer would be unsuccessful. We do not require counsel to file unnecessary motions, and thus, a demurrer is not required in each case. *Cf. Davis v. Kelly*, 303

express reference, requires that the indictment conform to ORS 132.550(7)." (Emphasis omitted.)).

[9] We observe that an indictment which merely restates the statutory language, without more, and contains no additional information (such as location, date range, on-or-about dates, or general description of the acts alleged) may very well be subject to a demurrer under ORS 135.630(2) or (4).

Or App 253, 267, 461 P3d 1043, *rev den*, 366 Or 826 (2020) ("Neither the state nor federal constitution requires counsel to advance a futile objection.").[10]

However, there are situations in which an indictment that would survive a demurrer may nonetheless fail to give constitutionally required pretrial notice. The issue most commonly arises in cases where an indictment simply tracks the wording of the statute, and the discovery provides evidence of more acts than there are counts in the indictment. *E.g.*, *Antoine I*, 269 Or App at 72; *State v. Molver*, 233 Or App 239, 244, 225 P3d 136, *rev den*, 348 Or 291 (2010); *State v. Magana*, 212 Or App 553, 560, 159 P3d 1163, *rev den*, 343 Or 363 (2007) (recognizing the issue in a case with 51 counts of charged conduct, although ultimately determining that the defendant received sufficient pretrial notice); *State v. Wells*, 147 Or App 125, 132-33, 935 P2d 447 (1997); *State v. Cooper*, 78 Or App 237, 240, 715 P2d 504 (1986). It is those cases in which counsel may validly determine that a motion for pretrial election is necessary to provide a defendant with constitutionally sufficient notice.

Because the two pleadings challenge different ways in which the state has allegedly failed to give constitutionally based pretrial notice, they are not substitutes for one another, nor are they specifically linked, such that a demurrer must be filed prior to any pretrial election. A defendant does not waive the ability to seek constitutionally required pretrial notice by not filing a demurrer. As in any

---

[10] In *Antoine III*, the Supreme Court indicated that notice challenges based on Article I, section 11, can also be raised in a demurrer. 368 Or at 774, 780. The Supreme Court found no reason to treat federal constitutional challenges in any different manner. *Id.* at 775. *Antoine III* thus suggests that a demurrer is available for notice challenges that are separate and apart from those listed in ORS 135.630.

To be sure, such a suggestion is difficult to square with the rest of the law surrounding demurrers, most notably, the rule that a demurrer must be based on the face of the indictment and our well-established rule that, generally, an indictment that tracks the wording of the statute will withstand a demurrer. Apart from the suggestion in *Antoine III*, we have found no case that separately analyzes a defendant's statutory and constitutionally based notice challenges, or that find the indictment sufficient as to one legal basis but not the other. Although a purely constitutional notice-based demurrer may exist, and defendants may want to pursue it in the appropriate case, we do not rely on its existence for purposes of our determination of the currently well-established ways in which a defendant can obtain constitutionally required pretrial notice.

case, counsel can select the motion or motions that are most appropriate for a defendant's situation.

D.  *Application to Defendant's Case*

Turning to the merits of defendant's assignment of error, we conclude that the trial court did not err in denying defendant's motion for a pretrial election because the notice that defendant received was "sufficient" to allow him to "prepare and present his defense." *Antoine III*, 368 Or at 785-86 (Duncan, J., concurring).

Defendant's strongest argument is that the pretrial discovery indicated that the acts occurred more times than there were charges in the indictment. The victim stated that "a lot of times with my dad, he likes to do inappropriate stuff to me." After she described the acts, she told the interviewer that they occurred "[l]ike a hundred times." She also indicated that the acts occurred when she saw defendant at motels, and that that happened "[a] hundred and thirty-two" times. And in our prior cases, we have observed that the need for pretrial election arises when the discovery discloses more alleged acts than there are crimes charged in the indictment. *See Bravo-Chavez*, 343 Or App at 328; *Antoine I*, 269 Or App at 72.

However, a defendant is not automatically entitled to a pretrial election anytime the discovery discloses more alleged acts that there are counts in the indictment. Each case requires a fact-specific inquiry into whether the indictment and the discovery, considered together, provide constitutionally sufficient notice that allows a defendant to conduct meaningful pretrial investigation, engage in trial preparation, and prepare for litigation of evidentiary issues. *See Antoine I*, 269 Or App at 79 n 8 (explaining what pretrial notice must permit a defendant to accomplish). To put it another way, a defendant must establish that the difference between the number of acts discussed in the discovery and the number of charges in the indictment prevented him from being able to prepare and present a defense, in light of the nature of the allegations and the charges, the elements the state must prove, and the available defenses. Defendant did not do so here.

It is important to recognize that the constitutional right to notice is not a right to notice in the form of a defendant's choosing and in a way that makes it easiest for the defendant to defend against the charges. *See Fair*, 326 Or at 491 (in the context of a demurrer, rejecting the defendant's argument which, "[a]t its core," was that "the charged crime is complex, making the indictment difficult to defend against"); *Magana*, 212 Or App at 560 (in the context of a demurrer, holding that numerous complex charged crimes and voluminous discovery alone, without a specific showing of need, was insufficient to allow a demurrer). There are many cases in which the nature of the charges and the elements the state must prove for a conviction necessarily limit the types of defenses that are available. There are many which require further investigation beyond that presented in the discovery. Those kinds of difficulties make it *harder* for a defendant to prepare and present a defense, but they do not *prevent* a defendant from doing so. Thus, they do not implicate constitutional notice. As previously stated, the constitutional right to notice is simply notice "sufficient to prepare and present [a] defense." *Antoine III*, 368 Or at 785-86 (Duncan, J., concurring). And what is "sufficient" notice will vary in each case and will depend on the nature of the allegations and the charges, the elements the state must prove, and the available defenses.

Here, the indictment charged defendant using language from the statute. For example, Counts 1 through 4 charged that defendant unlawfully and knowingly "engage[d] in oral intercourse" with the victim, who was "under twelve years of age." ORS 163.405(1)(b) ("A person who engages in oral *** intercourse with another person *** commits the crime of sodomy in the first degree if *** [t]he victim is under 12 years of age[.]"). The same was true for Counts 5 through 8, which alleged that defendant did unlawfully and knowingly "subject [the victim], a person under the age of 14 years, to sexual contact[.]" ORS 163.427(1)(a)(A) ("A person commits the crime of sexual abuse in the first degree when that person *** [s]ubjects another person to sexual contact and *** [t]he victim is less than 14 years of age."). The indictment also specified that for Counts 5 and 7, defendant was alleged to have touched the victim's vagina,

and for Counts 6 and 8, he was alleged to have touched her buttocks. Moreover, although the date is not an essential element of the offense, the indictment provided "on or about" dates, which provided defendant with a timeframe around which he was alleged to have committed the acts. Thus, the indictment in this case not only "track[ed] the pertinent wording of the statute defining the crime" but also contained "particular circumstances of the crime" and "specific acts bringing [defendant] within the condemnation of the statute." *Fair*, 326 Or at 490 (internal quotation marks omitted).

The pretrial discovery included a videotaped interview of the victim. In that interview, the victim stated that the acts happened when she and her brother would stay overnight in a motel with defendant. The victim stated that defendant licked her vagina and put her mouth on his penis. The victim also stated that defendant had her sit in his genital area and had his penis touch her vagina. The victim further stated that defendant touched his penis to her anus and pushed against her. Based on the victim's statements that the acts occurred "a lot of times" and "a hundred times," it was reasonable to infer that the acts occurred more than once, and the indictment charged only two counts for each act that the victim described in the discovery.[11] Thus, the pretrial discovery included detailed statements of acts that, if true, would subject defendant to criminal liability as charged in the indictment. And pretrial discovery included notice about the locations and context for the alleged acts through text messages and receipts.

Because dates were not a material element of the charges, defendant was not entitled to a date-based election. Nevertheless, the indictment alleged that defendant committed Counts 1 and 2 "on or about January 6, 2020," Counts 3, 4, 7, and 8 "on or about July 1, 2019," and Counts 5 and 6 "on

---

[11] We note that "at least twice" is the narrowest meaning of "more than once" and emphasize that this is not a case where the state charged, for example, one count for each act repeated for each time that defendant and the victim stayed overnight in a motel together. We do not foreclose that additional notice may be required if the state charges more than two counts based on the type of statements at issue here from a child victim who alleged repeated abuse, but who, because of her age, had a limited ability to ascertain things like the frequency of the abuse and who had difficulty with narrative recall.

or about February 16, 2020." In pretrial litigation, the state agreed that February 2020 was outside the timeframe that defendant had unsupervised access to the victim and noted that the pretrial discovery demonstrated that defendant had unsupervised visits with the victim between March 2019 and January 2020. The indictment and pretrial discovery thus provided a limited timeframe in which the state alleged that the acts had occurred. And although more detail (such as linking specific acts to specific motels, for example) would make it *easier* for defendant to conduct pretrial investigation and prepare for trial, it was not *necessary* for him to be able to do so, and thus, was not constitutionally required.

In sum, before trial, defendant knew that the state alleged that he committed two separate types of sexual offenses against the victim, what acts he was alleged to have engaged in that constituted those offenses, that those acts occurred at least twice, and that they occurred during a specific time period—between March 2019 and January 2020—in specific locations—motels—and under specific circumstances—when the victim stayed overnight with defendant. That notice was "sufficient" for defendant to "prepare and present his defense." *Antoine III*, 368 Or at 785-86 (Duncan, J., concurring). Accordingly, the trial court did not err in denying his motion for pretrial election.

### III. MISTRIAL MOTION

In his third assignment of error, defendant argues that the trial court erred when it denied his mistrial motion.

After the victim testified and exited the courtroom, the state called the victim's mother to testify, and the following exchange occurred:

"[THE COURT]: All right, [mother], if you'll come on up.

"[MOTHER]: Is there any way I can go step out here?

"[THE COURT]: Sure, if you need to take a recess, I'll let you do that, so we'll take our lunch break now, go ahead and deal with your daughter."

Following the lunch recess, defense counsel moved for a mistrial and argued:

"[T]he child testified, left the courtroom, was let into the hallway crying audibly with the doors to the courtroom closed, ***. [Mother] runs to her child essentially out of this courtroom, opens the door where the crying continues. My client is significantly prejudiced by this conduct and how it went down, it should have never happened for the child to be let in the hallway in that manner, and the outburst can't be cured in any other way besides a mistrial."

The prosecutor responded:

"I suppose if there's any concern by the [c]ourt, which I don't think that there should be, there could be a curative instruction given such as you're only to consider the testimony as you hear it from the witness stand, but we are in a trial of a very young child who was six at the time, is now eight, who was sexually abused, we have a youth as a witness, this is an emotional topic, and *** I don't believe there's any more prejudice to the defendant than the facts that are before the jury, which is that he's accused of pretty significant crimes against this child who had to testify who he chose to put on the witness stand."

After a colloquy with defense counsel, the trial court denied the motion.

Although the court offered to "add to" the jury instructions and to give "an additional instruction about expressly saying ignore the crying," defense counsel stated that she was "not inclined" to request an instruction because it would "draw more attention to what happened" and that she would "decide later." Defense counsel did not request a curative instruction, and the jury found defendant guilty on all counts.

"We review the denial of a motion for mistrial for an abuse of discretion." *State v. Stone*, 340 Or App 724, 736, 571 P3d 1140 (2025). As we have explained,

"The abuse of discretion standard has no hard and fast meaning, but abuse of discretion may occur when a decision is not supported by reason and evidence or when a court fails to exercise its discretion or to consider all relevant circumstances in making its decision."

*State v. Farmer*, 210 Or App 625, 640, 152 P3d 904, *rev den*, 342 Or 645 (2007) (internal quotation marks omitted).

Specifically, the denial of a mistrial motion "does not constitute an abuse of discretion unless the effect was to deny a defendant a fair trial." *Stone*, 340 Or App at 736.

> "Prejudice, as it may flow from the denial of *** a mistrial, means a reasonable possibility that the judge or jury will be influenced in the performance of the fact-finding function by the irregular event. Whether that reasonable possibility exists must initially be determined by the trial court."

*State v. Stanley*, 30 Or App 33, 36, 566 P2d 193, *rev den*, 280 Or 1 (1977). As relevant here, "whether a party's emotional outbursts in the courtroom afford the basis for a mistrial will depend upon the facts of the particular case." *Johnson v. Hansen*, 237 Or 1, 7, 389 P2d 330, *reh'g den*, 237 Or 1, 390 P2d 611 (1964).

Considering the particular facts of this case, we conclude that the record supports a determination that there was not a "reasonable possibility that the *** jury [would] be influenced" by the sound of the victim crying or by her mother's request. *Stanley*, 30 Or App at 36. The trial court made the following findings with respect to the victim's testimony:

> "I was watching the jurors, some of them were obviously emotionally concerned for the child, *** so it was an emotional charged thing for everybody involved in the process. And that's inescapable by the nature of an eight-year-old testifying."

The court then explained that it was not "sure how that behavior what happened outside of the courtroom or even mom's request to go out to comfort her child in any way was unfairly add[ing] to anything different than what would normally be expected of a child having to come to court and testify."

We conclude that the trial court did not abuse its discretion. *See State v. Hill*, 49 Or App 297, 299-300, 619 P2d 671 (1980) (rejecting the defendant's argument that "sympathy for the victim, generated by her [epileptic] seizure [while testifying], incurably prejudiced [the] defendant's opportunity for a fair trial"); *see also State v. Gill*, 243 Or 621,

622-23, 415 P2d 166 (1966) (concluding that the trial court did not abuse its discretion in denying the defendant's mistrial motion after the victim "became emotionally distressed as she testified"). In so concluding, we emphasize that "[w]e are reluctant to disagree with [the trial court's] finding[s] because, as we have noted previously, a trial judge is *** able to assess a juror's tone of voice, body language, and other intuitional and subjective factors which are seldom evident to appellate judges reading a transcript." *State v. Woodall*, 259 Or App 67, 77-78, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014) (internal quotation marks omitted) (concluding that the trial court "was not required to grant a mistrial" when the court "specifically found that the jurors were clear and unequivocal about being able to decide the case on the merits").

Moreover, the trial court determined that the "existing instructions" sufficiently addressed any prejudice, and the record supports that determination. Before trial, the court instructed the jury that its "verdict must be based only on the evidence received in the courtroom during the trial" and that "anything [jurors] see or hear outside of this courtroom is not evidence." Further, after the parties rested, the court instructed the jury, in relevant part:

> "It is your duty to weigh the evidence calmly and dispassionately and to decide this case on its merits.
>
> "*****
>
> "Do not allow any personal feelings, sympathy, prejudice, or bias, whether conscious or unconscious, to influence your decision-making."

"We presume that jurors follow their instructions, absent an overwhelming probability that they would have been unable to do so." *State v. Williams*, 276 Or App 688, 695, 368 P3d 459, *rev den*, 360 Or 423 (2016) (internal quotation marks omitted).

Seeking a different result, defendant relies on our decision in *State v. Cox*, 272 Or App 390, 359 P3d 257 (2015), and argues that the "outburst increased to an unfair degree the likelihood that the jury would find defendant guilty based not on an objective evaluation of the evidence adduced

at trial" and that "the prejudice \* \* \* was not cured by any remedial measure that the trial court took." *Cox* does not assist defendant. In that case, the defendant challenged the denial of his mistrial motion "on the basis that the prosecutor had improperly exploited evidence." *Id.* at 398. We explained that "[t]he prosecutor in rebuttal closing made the kind of comment specifically forbidden by the trial court in this case earlier in the proceedings" and "relied on inflammatory facts not in evidence." *Id.* at 409-10. Thus, we concluded that the trial court abused its discretion because the prosecutor's rebuttal argument was "prejudicial to the defense" and "the trial court's instruction was insufficient to cure that prejudice." *Id.* at 412. In contrast, here, we do not understand defendant to argue that the prosecutor made improper statements that deprived him of a fair trial. Instead, defense counsel stated that she was "not saying anything was intentionally caused to happen," and the prosecutor represented that "there was every effort made by [the state's] staff and [the court's] staff to have [the victim] removed from any audible range of the jury as quickly as possible." The trial court did not abuse its discretion.

## IV.  SENTENCES

In his last four assignments of error, defendant makes a combined argument that the trial court violated his rights under the state and federal constitutions by imposing 300-month sentences on his first-degree sodomy convictions and 75-month sentences on his first-degree sexual abuse convictions.

"We review the proportionality of a sentence for legal error, and we are bound by the trial court's findings of historical fact if supported by evidence in the record. In the absence of express factual findings, we presume that the court resolved factual disputes consistently with its ultimate decision." *State v. Hurtado*, 335 Or App 560, 572, 558 P3d 1267 (2024), *rev den*, 373 Or 305 (2025) (citation omitted).

"A punishment violates Article I, section 16, [of the Oregon Constitution] only if it is so disproportionate to the offense as to 'shock the moral sense' of reasonable people." *Id.* (quoting *State v. Rodriguez/Buck*, 347 Or 46, 57-58, 217

P3d 659 (2009)). Although the Supreme Court "has identi-fied at least three factors that bear upon that ultimate con-clusion," defendant challenges only the trial court's assess-ment of the first factor: the "comparison of the severity of the penalty and the gravity of the crime." *Rodriguez/Buck*, 347 Or at 58.

As relevant here, "[w]here the trial court has found that [the] defendant is intellectually impaired, * * * the court must consider [the] defendant's intellectual disability in order to assure that the sentence is constitutionally pro-portionate—that the sentence fits the crime." *State v. Ryan*, 305 Or App 750, 752, 473 P3d 90 (2020). "The whole point of intellectual disability is not simply to ask whether [the] defendant knows the nature of the offense or whether he can conform his conduct. It is to determine the degree of culpability of [the] defendant's conduct." *Id.* at 770 (internal quotation marks omitted).

On appeal, defendant "does *not* argue that the sentence itself appears disproportionate to the statutory offense." (Emphasis in original.) Instead, he argues that "his personal characteristics demonstrate that he was less culpable than a typical offender" and that, even though the "evidence established that defendant's judgment and abil-ity to make reasoned decisions was impacted by his dis-abilities," "the trial court did not give appropriate weight to defendant's developmental disability." We reject those arguments.

Here, the trial court explicitly stated that it was "weighing [defendant's] intellectual disability" and that it considered "[t]he degree to which that disability affects his ability to understand the nature of the consequences of his behavior and conduct and the ability to conform his behavior to the law." The court found that defendant "has some degree of adaptive skill building around that" and that his IQ was 73. The court further found that, through observing defendant's testimony and his statements at sen-tencing, defendant was "able to pretty clearly understand what's going on, * * * explain himself, he's very succinct, he was very direct on the stand, he answered all the questions that were put to him," and that he "clearly understands and

is able to conform his conduct to the law and the expectations of the court." Further, in assessing the gravity of the offenses, the court found that the jury found defendant guilty of "allegedly sexually abusing in perhaps some of the most vulgar ways possible a child who was between the ages of five and seven at the time of these offenses, repeatedly, not just on one occasion, but over and over again."

We have reviewed the record and conclude that it supports the trial court's determinations concerning defendant's culpability. Thus, we conclude that the trial court adequately "consider[ed] defendant's intellectual disability in order to assure that the sentence is constitutionally proportionate." *Ryan*, 305 Or App at 752. Because the trial court did not err in its assessment, we conclude that defendant's sentence "is not the 'rare' case that would 'shock the moral sense' of reasonable people." *Hurtado*, 335 Or App at 575.

Finally, "we turn to defendant's challenge under the Eighth Amendment [to the United States Constitution]." *Id.* "For the reasons previously discussed, we conclude that defendant's sentence does not run afoul of his Eighth Amendment protections." *Id.* "Accordingly, because defendant's sentence does not violate the protections encapsulated in Article I, section 16, or the Eighth Amendment, the trial court did not err[.]" *Id.*

Affirmed.

**ORTEGA, P. J.,** concurring.

I concur in the majority's legal analysis and resolution of this case. I also resonate with the concerns expressed in Judge Hellman's concurrence and agree with her sense of the inconsistencies in our case law and their possible resolution.

I concur with both opinions.

**HELLMAN, J.,** concurring

The legal analysis in my majority opinion provides the correct resolution of this case. However, I write separately to highlight inconsistencies in our case law regarding demurrers that I believe we should remedy in an appropriate

case which, regrettably, this is not. Specifically, it is my view that we have incorrectly concluded that a trial court may consider pretrial discovery when ruling on a demurrer, as we held in *State v. Antoine*, 269 Or App 66, 76, 344 P3d 69, *rev den*, 357 Or 324 (2015) (*Antoine I*); *State v. Molver*, 233 Or App 239, 244, 225 P3d 136, *rev den*, 348 Or 291 (2010); *State v. Wells*, 147 Or App 125, 132-33, 935 P2d 447 (1997); and *State v. Cooper*, 78 Or App, 237, 240, 715 P2d 504 (1986). We have also incorrectly concluded that pretrial discovery can cure, that is, fix, imprecision that appears on the face of charging instruments, as we did in *State v. Wright*, 167 Or App 297, 307, 999 P2d 1220, *adh'd to as modified on recons*, 169 Or App 78, 7 P3d 738, *rev den*, 331 Or 334 (2000), and *State v. Shadley/Spencer/Rowe*, 16 Or App 113, 123, 517 P2d 324 (1973) (*Shadley*). Those holdings are contrary to ORS 135.630 and need to be overruled.

On the first point, I begin with the plain text of ORS 135.630, which provides that a defendant "may demur to the accusatory instrument" when a deficiency "appears upon the face thereof." Generally, an indictment is sufficient to withstand a demurrer "if it tracks the pertinent wording of the statute defining the crime." *Molver*, 233 Or App at 244. However, we have also recognized an "exception" to that rule, holding that a demurrer is appropriate when the indictment, together with the pretrial discovery, does not provide the defendant with sufficient pretrial notice of the specific criminal conduct that the state intends to prove. *E.g.*, *Antoine I*, 269 Or App at 76; *Molver*, 233 Or App at 244; *Wells*, 147 Or App at 132-33; *Cooper*, 78 Or App at 240-41.[1] But that approach is contrary to ORS 135.630, which

---

[1] Our holdings in those cases appear to be based on an incorrect extension of *State v. Sanders*, 280 Or 685, 688-90, 572 P2d 1307 (1977). In *Sanders*, the Supreme Court held that an indictment that charges a defendant with burglary must include an allegation of the crime that the defendant intended to commit when he unlawfully entered the building. *Id.* at 691. The Supreme Court arrived at that conclusion based on a constellation of factors, including the "long practice in Oregon of specifying the intent which the defendant is charged with having at the time of the breaking and entering, the unanimous view of other jurisdictions with comparable statutes that it is necessary to specify the intent and the lack of any showing of prejudice against the state by continuing such practice." *Id.* In addition, the court determined that burglary was one of the limited crimes for which "a statement of the particular circumstances of the crime is necessary in order to charge the defendant with having committed specific acts bringing him within the condemnation of the statute, and in those cases the indictment must

clearly states that a demurrer is available only when the deficiency *"appears upon the face"* of the accusatory instrument. (Emphasis added.) Indeed, we have previously come to that conclusion in *State v. Morgan*, 151 Or App 750, 951 P2d 187 (1997), *rev den*, 327 Or 82 (1998). There, we correctly concluded that "a demurrer cannot be sustained on the basis of facts extrinsic to the indictment" because ORS 135.630 permits demurrer based only "on the face of the indictment." *Id.* at 754-55. As a result, a demurrer cannot be the solution when the notice problem arises after a review of the pretrial discovery. Our cases to the contrary are wrong and should be overruled.

On the second point, we have repeatedly held that pretrial discovery is *"generally* sufficient to cure imprecision in charging instruments." *Wright*, 167 Or App at 307 (emphasis in original); *see also, e.g.*, *State v. Kelly*, 263 Or App 361, 372, 328 P3d 757, *rev den*, 356 Or 575 (2014); *State v. Duffy*, 216 Or App 47, 50, 171 P3d 988 (2007); *State v. Magana*, 212 Or App 553, 559-60, 159 P3d 1163, *rev den*, 343 Or 363 (2007); *State v. Andre*, 178 Or App 566, 569, 38 P3d 949 (2002); *Shadley*, 16 Or App at 123.

To the extent that we have used the term "imprecision" to refer to an indictment that—on its face—complies with statutory standards but still fails to provide a defendant with constitutionally required notice, those holdings were correct. Pretrial discovery can "cure" imprecision in

---

be direct and certain as to such circumstances." *Id.* at 688 (citing *State v. Smith*, 182 Or 497, 502, 188 P2d 998 (1948)).

In light of the subsequent direction in the law, *Sanders* may be best understood to stand for the proposition that the indictment must include "particular circumstances of the crime" when those "particular circumstances" are essentially an element of the offense. *Id.* But *Sanders* does not support the proposition that there is an exception to the statutory requirement that a demurrer be based on the face of the indictment, as we have previously concluded. *See, e.g.*, *Wright*, 167 Or App at 311 (concluding that because the crimes alleged were "relatively simple" and "not complex or open-ended, as in *Sanders*," it was likely that pretrial discovery would "dispel any uncertainty as to the particular bases of the charges" created by the charging instrument). Since *Sanders* was decided in 1977, the Supreme Court has not again held that any statute met this standard. Indeed, it has been the legislature that has enacted further heightened pleading requirements, such as those for violations of the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO). *See, e.g.*, *State v. Stout*, 362 Or 758, 769, 415 P3d 567 (2018) (recognizing that the legislature created a specific pleading requirement for ORICO cases in ORS 166.720(6)).

the sense that it can supplement a facially valid indictment to provide constitutionally required pretrial notice.

But that oft-repeated holding can also fairly be read to establish that pretrial discovery can "cure" a facially invalid indictment; that is, fix facial problems with the indictment. Indeed, our opinions in *Shadley* and *Wright* say as much.

In *Shadley*, we opined—without citing any legal authority—that the availability of pretrial discovery "reduce[d] the importance" of the notice function of an indictment, which we recognized served "to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense." 16 Or App at 119 (internal quotation marks omitted). To support that proposition, we remarked—again, without citation—that "Oregon criminal procedure has been and is now evolving toward the concept that an indictment is merely a formal method of initiating criminal proceedings and identifying the name of the crime that the accused is alleged to have committed." *Id.* at 120. We thus held that if discovery did not provide the required information, such that a defendant was "surprised" at trial, "the defendants should be granted continuances in order to prepare their defense."[2] *Id.* at 123.

In *Wright*, we embraced *Shadley*'s "pragmatic premise that the availability of pretrial criminal discovery is *generally* sufficient to cure imprecision in charging instruments." *Wright*, 167 Or App at 307 (emphasis in original). There, we read *Shadley* to hold that "imprecision" referred to an indictment that did not meet statutory standards and that pretrial discovery was an appropriate "cure" for such imprecision. *Id.* at 307, 311 ("In short, this is not a case where the discovery is unlikely to inform the defendant of the specific criminal conduct the state intends to prove."). That is, we concluded that statutory imprecision could be fixed without granting a demurrer.

Those holdings are incorrect. ORS 135.630 makes clear that an indictment stands or falls on the face of the

---

[2] This approach is completely unworkable in today's courtrooms where trial judges and parties work under enormous time and scheduling constraints and where jurors' time is treated with respect.

instrument. And we have been clear that facts extrinsic to the indictment cannot support a defendant's demurrer to the indictment. *See Morgan*, 151 Or App at 754-55 (recognizing that a demurrer cannot be sustained on the basis of facts extrinsic to the indictment because ORS 135.630 permits demurrer based only "on the face of the indictment"). We cannot allow the state to rely on discovery to cure a problem on the face of an indictment and simultaneously prohibit a defendant from relying on discovery to challenge an indictment. In other words, ORS 135.630 does not permit discovery to play any role in the demurrer analysis. Accordingly, neither the existence of pretrial discovery nor the examination of actual pretrial discovery may cure a facially invalid indictment. If additional specificity is needed to survive a demurrer, that specificity must appear in the indictment itself.

To summarize, if the indictment, on its face, meets the standards in ORS 135.630(2) and (4), a defendant may not challenge the indictment via demurrer, even in circumstances in which the defendant seeks additional specificity to enable them to sufficiently prepare and present a defense. No "exception" exists, even in cases in which pretrial discovery reveals more events than charges, or which raises other constitutional pretrial notice questions. And conversely, the existence of pretrial discovery cannot "cure," that is, fix, a facially invalid indictment. Put simply, pretrial discovery plays no role in a statutory demurrer analysis.

In my view, the proper analytical path is as follows. If the indictment is vulnerable to challenge under either ORS 135.630, Article I, section 11, of the Oregon Constitution, or the Sixth and Fourteenth Amendments to the United States Constitution, the defendant should demur, raising all applicable arguments. If the court concludes that the indictment—on its face—does not meet statutory or constitutional standards, it should allow the demurrer. The court's decision about the validity of the indictment must be made without regard to pretrial discovery.

If the trial court allows the demurrer but the state can provide the specificity required to bring the indictment into compliance with the law, the state must do so, either through an amendment to the indictment or by resubmission

to grand jury. That is so because the mere existence of pretrial discovery cannot cure an indictment that is deficient on its face.

A demurrer, however, is not a defendant's sole means of obtaining notice of the charges against them sufficient to prepare and present a defense. 349 Or App at 281-82; *see also Antoine v. Taylor*, 368 Or 760, 786, 799 P3d 48 (2021) (*Antoine III*) (Duncan, J., concurring) ("[T]here should be no question that a defendant has a right to [pretrial] notice, that the state must not violate that right, and that a trial court must enforce it."). If the indictment survives a demurrer, a defendant's first step to obtain constitutional notice is through an examination of pretrial discovery. After that review, if a defendant believes that more notice is constitutionally required, a defendant could seek a motion for a pretrial election to require the state to identify more clearly which conduct it intends to rely upon for which counts. *State v. Bravo-Chavez*, 343 Or App 326, 336, 578 P3d 725, *rev den*, 374 Or 437 (2025) (rejecting the state's argument that a demurrer is the exclusive mechanism to challenge a lack of pretrial notice and concluding that "[a] defendant can file a motion for pretrial election to obtain notice of the factual occurrence that is the basis for a charge"). If more notice is required under Article I, section 11, and the Sixth and Fourteenth Amendments, the court must order that notice to be provided to defendant pretrial. Again, if the state provided additional specificity in the indictment, pretrial election would likely not be necessary in the majority of cases.

The reason I took the time to write this concurrence and to point out the above legal errors is that the demurrer process is not simply an academic exercise in a somewhat niche area of law. It is an issue that directly impacts Oregonians every day. I worry that in trying to streamline and condense indictments to the bare minimum to pass constitutional muster our appellate case law has created notice problems for defendants that we then tried to fix with a legally incorrect "exception" approach.[3] And it troubles me that leaving this area of law uncorrected means that defendants

---

[3] I also worry that this bare minimum approach creates problems for double jeopardy protections because it relies on the trial record to establish exactly what factual occurrences a defendant was tried on. *See Shadley*, 16 Or App at 120.

will quite likely be tried and convicted on facially invalid indictments. Should that occur, Oregonians will pay very real costs. Defendants will suffer the loss of constitutional rights, and possibly their liberty. Victims and witnesses will contend with the uncertainty of appeals and the burden of any retrials. And the players in our already stretched criminal justice system—defense counsel, prosecutors, and trial courts—risk having to spend scarce resources to relitigate cases. Those costs are not acceptable in our legal system, and I have serious misgivings about allowing our incorrect case law to stand.

I thus greatly regret that this not the right case for us to correct our errors. Defendant did not file a demurrer in this case, and so he has not raised any assignments of error regarding the scope or proper interpretation of a demurrer. And neither party has asked us to overrule the holdings I describe above, despite being given an opportunity to make that request in supplemental briefing. It is my hope that defense attorneys will consider raising challenges to our law when appropriate at both the trial and appellate level, so that we will someday soon have the opportunity to course correct and overrule our holdings that strayed from the proper interpretation of ORS 135.630.

I concur.